EDWIN PRATHER, CABN 190536
MAX MIZONO, CABN 286573
PRATHER LAW OFFICES
461 Bush Street, Suite 350
San Francisco, CA 94108
Telephone: (415) 881-7774
Email: edwin@pratherlawoffices.com
　　　　max@pratherlawoffices.com

Attorneys for Defendant
REFUGIO DIAZ

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>ALVIN FLORIDA, JR.,<br>ROBERT ALHASHASH RASHEED,<br>JOHN LEE BERRY, III,<br>REFUGIO DIAZ and<br>STEPHAN ALEXANDER FLORIDA.<br><br>　　　　Defendants. | Case No.: CR 14-00582 PJH<br><br>**DEFENDANTS' OBJECTIONS TO THE GOVERNMENT'S NOTICE OF CO-CONSPIRATOR STATEMENTS**<br><br>Pretrial Conference Date: October 12, 2016<br>Time: 1:30 p.m.<br>Judge: The Honorable Phyllis J. Hamilton<br><br>Trial Date: October 31, 2016 |

# TABLE OF CONTENTS

I. INTRODUCTION ..................................................................................................................1

II. ARGUMENT .......................................................................................................................1

    A. Defendants' Response to the Government's Notice ...............................................2

        1. All Evidence of the Now-Dismissed Mail Fraud Counts Should be Excluded as Irrelevant Under Federal Rule of Evidence 402 ........................................2

        2. Even if this Court Determines that Evidence for the Mail Fraud Scheme is Relevant to Prove the Bid-Rigging Conspiracy, the Court Should Nevertheless Exclude it Under Federal Rule of Evidence 403 .........................4

        3. Appendix F in the Government's Notice is Deficient ..............................5

    B. Defendants' Objections to the Government's Co-Conspirator Statements ............7

        1. This Court Should Exclude the Co-Conspirator Statements Because Multiple Conspiracies, Rather than One Conspiracy, Existed ..............................7

            i. Nature of Scheme .........................................................................9

            ii. Identity of the Participants ........................................................10

            iii. Quality, Frequency and Duration of Each Conspirator's Transactions .....11

            iv. Commonality of Times and Goals .............................................11

        2. Even if this Court Determines the Purported Co-Conspirator's Statements are Relevant, the Court Should Nevertheless Exclude Them Under Federal Rule of Evidence 403 ................................................................................12

III. CONCLUSION .................................................................................................................12

# TABLE OF AUTHORITIES

**CASES**

*Bourjaily v. United States*, 483 U.S. 171 (1987) ....................................................................7

*Duplex Printing Press Co. v. Deering*, 254 U.S. 443 (1921) ...................................................2

*Grunewald v. United States*, 353 U.S. 391 (1957) .................................................................11

*Kotteakos v. United States*, 238 U.S. 750 (1946)....................................................................8

*Nash v. United States*, 229 U.S. 373 (1913) ...........................................................................2

*United States v. Arbelaez*, 719 F.2d 1453 (9th Cir. 1983) ......................................................8

*United States v. Bowman*, 215 F.3d 951 (9th Cir. 2000) ........................................................8

*United States v. Ellis*, 156 F.3d 493 (3d Cir. 1998) ................................................................7

*United States v. Hayter Oil Co.*, 51 F.3d 1265 (6th Cir. 1995) ...............................................9

*United States v. Komisaruk*, 885 F.2d 490 (9th Cir. 1989).....................................................2

*United States v. Krasovich*, 819 F.2d 253 (9th Cir. 1987) ....................................................11

*United States v. Martinez-Gonazales*, 89 F. Supp. 62 (S.D. Cal 1950) ..................................8

*United States v. Melendez-Bernal*, 927 F.2d 611 (9th Cir. 1991).........................................12

*United States v. Percival*, 756 F.2d 600 (7th Cir. 1985).......................................................11

*United States v. Socony-Vacuum Oil Co. Inc.*, 301 U.S. 150 (1940).......................................2

*United States v. Zemek*, 634 F.2d 1159 (9th Cir. 1980).........................................................9

**RULES**

Local Rule 16-1(c)(4) ................................................................................................................5

Fed. R. Evid. 402 .......................................................................................................................2

Fed. R. Evid. 403 .................................................................................................................4

Fed. R. Evid. 801(d)(2)(E) ....................................................................................................7

## I. INTRODUCTION

Defendants Alvin Florida, Jr., Robert Alhashash Rasheed, John Lee Berry, III, Refugio Diaz, and Stephan Alexander Florida (collectively, "Defendants") submit their objections to the Government's Notice of Coconspirator Statements ("Notice") (Dkt. No. 194).

## II. ARGUMENT

The defendants object to the government's notice on three grounds. First, because the notice was filed prior to the government's dismissal with prejudice of the mail fraud counts, the defendants have no choice but to respond to the items of evidentiary proof supporting the mail fraud scheme, and not the bid-rigging conspiracy. Accordingly, defendants object to any evidence the government seeks to introduce that tends to prove the now-dismissed mail fraud scheme as irrelevant to the bid-rigging conspiracy under Federal Rule of Evidence ("Fed. R. Evid.") 402. In the alternative, defendants additionally object to the same evidence under Fed. R. Evid. 403.

Second, defendants object to Appendix F as deficient, and should therefore be excluded.

Third, defendants object to the introduction of all the co-conspirators statements under Fed. R. Evid. 801(d)(2)(E) because the government has failed to allege one single conspiracy in the indictment. Rather, the nature of the bid-rigging conspiracy itself, as well as its vague and generalized description in the indictment, demonstrate the government's improper attempts to introduce evidence of multiple alleged conspiracies. The Court should not permit the government to introduce such statements under an improper theory of an overarching, all-encompassing "conspiracy." In the alternative, defendants object to the co-conspirator statements under Fed. R. Evid. 403.

//

//

//

## A. DEFENDANTS' RESPONSE TO THE GOVERNMENT'S NOTICE

### 1. All Evidence of the Now-Dismissed Mail Fraud Counts Should Be Excluded as Irrelevant Under Federal Rule of Evidence 402[1]

The government's notice is instructive regarding its theories of evidentiary proof for both the bid-rigging conspiracy, and the dismissed mail fraud counts. Given the dismissal of the mail fraud counts, all evidence the government purportedly wants to use, or wanted to use, to prosecute this crime, should be excluded from the government's case-in-chief under Fed. R. Evid. 402 as irrelevant. "Irrelevant evidence is not admissible." Fed. R. Evid. 402. Indeed, "a district court may limit evidence to proof that is legally relevant." *United States v. Komisaruk*, 885 F.2d 490, 493 (9th Cir. 1989).

A conspiracy under the Sherman Act is similar to any other criminal conspiracy: a combination of two or more persons or entities engaged in concerted action to accomplish an illegal purpose or to accomplish a legal purpose by illegal means. *Duplex Printing Press Co. v. Deering*, 254 U.S. 443, 465-66 (1921). Unlike the general conspiracy statute, 18 U.S.C. § 371, however, the Sherman Act does not require proof of an overt act. *Nash v. United States*, 229 U.S. 373, 378 (1913). The conspiratorial agreement, itself, constitutes the complete criminal offense. *United States v. Socony-Vacuum Oil Co. Inc.*, 310 U.S. 150, 224 n.59 (1940).

Under this framework, the government's theory of the bid-rigging conspiracy[2] is that the

---

[1] Defendants reserve the right to supplement their argument and claims in light of the Government's forthcoming witness and exhibits lists. Defendants will also renew this argument in a Motion in Limine.

[2] The government's Notice states in greater detail: "First, rather than competitively bidding against each other during the public auction, defendants and their coconspirators would refrain from bidding against one another for certain properties. Sometimes they determined which properties to rig before the auction. Alternatively, it was done during the public auction for a given property. To give each other time to work out who was "in" and who would acquire the property at the public auction, conspirators would often bid in small increments, usually $100. The conspirators used code words, phrases, and gestures to communicate their intent to stop bidding and "round" a property. For example, they would ask one another whether they wanted to "work it out" or "work this" or "you in?". Alternatively, the conspirators would simply gesture to each other, such as a wink or a nod. Once they determined who was in, the conspirators would select one person to "take" the property – the conspirators' term for purchasing the property and tendering the funds – at the public auction. The person would continue bidding at the public auction until he or she outbid any other auction bidders who were not part of the conspiracy. The auctioneer would then announce that the property was sold, and the coconspirator would provide the auctioneer with checks to purchase the property. By not competing against each other, defendants acquired properties at the

defendants completed the crime prior to any rounds, payments, or actions that occurred following the public auction. In other words, it was the conspiratorial agreement to rig bids at or before the public auction – both verbally and non-verbally through gestures such as winks and nods – that constituted the completed offense in count one of the indictment. Any evidence of what happened or transpired following the conspiracy to rig bids at the public auction is therefore irrelevant, and under Fed. R. Evid. 402, should be excluded from the government's case-in-chief.

Instead, only evidence relevant to the bid-rigging conspiracy should be admissible at trial. Such evidence, in the government's notice, includes "witness interviews, documents, and audio/visual evidence" that "demonstrates that the bid-rigging conspiracy consisted of an overarching agreement among the would-be competitors not to bid on properties sold at the Alameda County foreclosure auctions." *See* Dkt. No. 194 at 5.

In contrast, the government's notice describes the dismissed mail fraud counts as a separate crime, with different evidentiary proof, following the completed bid-rigging conspiracy. It operated as follows:

> "after the public auction, the conspirators engaged in a "round," a system of successive bidding to determine who would purchase the property and the amount of payoffs that the other coconspirators would be paid for rigging the auction. Next, the conspirators submitted auction paperwork containing misleading representations to facilitate the acquisition of the property following a round. Finally, the conspirators would receive the deed to the illegally acquired property and make the payoffs they had previously determined."

*See* Dkt. No. 194 at 5.

Indeed, in the government's own words, the rounds, step aside payments, submissions of the auction paperwork with allegedly misleading representations, receipt of the deed and funds, etc., are part and parcel – and evidentiary proof – of the dismissed mail fraud scheme. Therefore, all evidentiary

---

public auction at below-market prices and maximized their potential resale value." *See* Dkt. No. 194 at 5-6.

items included in Appendixes A (Round Sheets), B (Payment Ledgers), C (Emails), D (Audio/Video Recordings), E (Other Documents - Checks) are irrelevant to the bid-rigging conspiracy, only relevant to the mail fraud scheme, and should therefore be excluded.

**2. Even if This Court Determines that Evidence for the Mail Fraud Scheme is Relevant to Prove the Bid-Rigging Conspiracy, the Court Should Nevertheless Exclude it Under Federal Rule of Evidence 403[3]**

Fed. R. Evid. 403 states "the court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Thus, even if the Court determines that the Appendixes – and the evidence contained therein – from the government's notice are relevant to the bid-rigging conspiracy, the Court should nevertheless exclude this evidence under the balancing test required by Fed. R. Evid. 403.

First, the Court should exclude all evidence derived after the public auction (round sheets, payments, submissions of auction paperwork, etc.) because its probative vale is substantially outweighed by the danger of unfair prejudice. The government's theory is that the defendants agreed among themselves to limit bidding on properties in which several of them were interested. If this group successfully offered the highest bid and won the public auction, the group allegedly held a second auction among themselves, with the property awarded to the highest bidder at that second auction or "round," and the amount bid in this secondary auction was divided among those bidders by a formula that had evolved over time.

However, evidence of the "round", and "payoffs", and other evidence following the public auction, would only serve to inflame the jury as it does not further prove the conspiracy to rig bids, which had already concluded once the public auction closed. Indeed, the government would either be

---

[3] Defendants reserve the right to supplement their argument and claims in light of the Government's forthcoming witness and exhibits lists. Defendants will also renew this argument in a Motion in Limine.

free to argue, or at the very least, the jury would be able to draw an inference from this evidence, that the defendants profited handsomely at the expense of the banks and defaulting homeowners, etc., when in reality, any profit gained by the defendants varied greatly, or was really no profit at all, and no injury flowed to the banks.

Second, the probative value of the evidence is substantially outweighed by the danger of confusing the issues, misleading the jury, and wasting time. A bid rigging conspiracy is certainly more complex than, for example, a conspiracy to distribute controlled substances, or illegal reentry by an alien, or felon in possession of a firearm. It would do the jury a disservice to allow the government to introduce evidence related to the mail fraud counts, that in the end will only tend to confuse and mislead them. Evidentiary proof for the bid-rigging conspiracy solely requires a conspiratorial agreement to rig bids – nothing more. Round sheets, payouts, receipt of funds, etc., are unnecessary for the government to prosecute count one.

Moreover, the Court has indicated on several occasions its desire to adhere to the current schedule, and not leak into the first week of December for trial. With the introduction of the round sheets, payoffs, payment ledgers, etc., the danger is real that this will cause undue delay and waste the Court's time, and extend the trial beyond the currently scheduled dates. The Court should therefore exclude all evidence related to the mail fraud counts, as more prejudicial than probative for the above mentioned reasons.

**3. Appendix F in the Government's Notice is Deficient**

In addition to the arguments raised above, the government's notice with respect to the anticipated witness testimony is deficient (Appendix F). In its notice, the government correctly cites to the Court's previous orders establishing procedures for complying with Local Rule 16-1(c)(4), and notes that any notice of admission of a coconspirator statement must be "the *specific* coconspirator statements to be

introduced via that witness and/or the source of the source of the conspirator statement. *See* Dkt. No. 194 at 6. Despite its italicizing of the word specific, however, the government's chart merely provides notice of a "summary" of the proffered statement, and at times, the proffered statement's "summary" isn't even a summary at all. (*See* Appendix F, Statement 6, "Defendant Rasheed, Brian McKinzie, Brad Roemer, Robert Kramer, and an unindicted coconspirator *made several statements…*") A notice that summarizes the statement merely by stating that the statement was a statement is no notice at all. (*See also* Appendix F, Statement 8, "After the public auction….the agent overheard round discussions between several conspirators…")

Moreover, the government fails to provide notice of the actual statements made in this discussions and who, specifically, made the statements. Of the twenty "statements" sought to be introduced pursuant to Appendix F, five of the summaries merely note that individuals "made several statements" without noting what those statements were. At least two of them note that an undercover agent "overheard round discussions" without noting specifically what the overheard statements were, and by whom they were made. The remaining summaries are similarly deficient for lack of specificity. Statement 14, for example, notes that five individuals "discussed payment and round details…" Again, the government fails to state what, specifically, the statement was, and who made the statement. Statement 17 indicates that "Joudi had a discussion with Robert Kramer regarding payoffs owed between Kramer and defendant Rasheed pursuant to rounds." The government fails to identify when this discussion occurred or whether the statements were made within the conspiracy period.

In sum, the government has failed to provide the defense with adequate notice as to the specific statements sought to be admitted pursuant to Fed. R. Evid. 801(d)(2)(E) in violation of this Court's established procedures for complying with Local Rule 16-1(c)(4). Until sufficient notice is produced by the government, any motion on its behalf to admit these alleged coconspirator statements through

witness testimony should be denied.

**B. DEFENDANTS' OBJECTIONS TO THE GOVERNMENT'S CO-CONSPIRATOR STATEMENTS**

**1. This Court Should Exclude the Co-Conspirator Statements Because Multiple Conspiracies, Rather than One Conspiracy, Existed[4]**

At trial, the government will seek to introduce several "co-conspirator" statements under Fed. R. Evid. 801(d)(2)(E) in support of its prosecution of Count One, the bid-rigging conspiracy. Under Fed. R. Evid. 801(d)(2)(E), an out of court statement is admissible and not hearsay if a party can demonstrate that the statements were made by a co-conspirator "during the course and in furtherance of the conspiracy." Fed. R. Evid. 801(d)(2)(E). In order for the Court to admit alleged co-conspirator statements into evidence, the government must demonstrate by a preponderance of the evidence that (1) a conspiracy existed at the time of the statements; (2) all Defendants and the alleged co-conspirators were members of the conspiracy; and (3) the statements were made during the course of the conspiracy and in furtherance of the conspiracy. *See Bourjaily v United States,* 483 U.S. 171, 175 (1987). The government, however, is not permitted to point to just any "conspiracy" as grounds for admitting a hearsay statement. Rather, the conspiracy must be "'factually intertwined' with the offenses being tried." *See United States v. Ellis,* 156 F.3d 493, 497 (3d Cir. 1998).

Here, the government has requested the Court rule on the first two prongs in its notice, and that, following the requisite proof at trial, that the Court ultimately admit such statements as made during the course of, and in furtherance of the bid-rigging conspiracy. The government's framing of this issue, however, relies on the flawed assumption that the bid-rigging conspiracy, as charged in count one, constituted a single conspiracy, where in reality, it contemplated multiple conspiracies between the defendants and their co-conspirators.

---

[4] Defendants reserve the right to supplement their argument and claims in light of the Government's forthcoming witness and exhibits lists. Defendants will also renew this argument in a Motion in Limine

In fact, the Government has not provided this Court with sufficient evidence from which the Court could lawfully conclude that there is a single conspiracy, that each declarant was a member of that conspiracy, that each defendant too was a member of that conspiracy, and that each statement was in furtherance of that same conspiracy. While the defendants certainly understand and appreciate that under Fed. R. Evid. 801(d)(2)(E), the charge of a single conspiracy opens up the defendants to otherwise inadmissible hearsay by their co-conspirators, *see, e.g., United States v. Bowman*, 215 F.3d 951, 968 n.14 (9th Cir. 2000) (Rule 801(d)(2)(E) applies where declarant and defendant are part of the "same conspiracy"), the defendants nevertheless object to the government's inclusion of any of these statements as not hearsay pursuant to Rule 801(d)(2)(E) due to the existence of multiple conspiracies.

In fact, it is well settled under Supreme Court and Ninth Circuit law, that the government may not charge as a single conspiracy, conduct that constitutes multiple, disparate alleged schemes. *See Kotteakos v. United States*, 238 U.S., 750 (1946); *United States v. Arbelaez*, 719 F.2d 1453, 1457 (9th Cir. 1983); *United States v. Martinez-Gonzales*, 89 F. Supp. 62, 63-64 (S.D. Cal. 1950) (dismissing counts for duplicity). To determine whether alleged conduct constitutes a single conspiracy or multiple conspiracies, "the basic test is whether there was an overall agreement to perform various functions to achieve the objectives of the conspiracy" and "looking only at the face of the indictment, the allegations must be such that a reasonable jury could conclude that a single conspiracy exists." *Arbalaez*, 719 F.2d 1453, 1457-58.

Here, looking only at the face of the indictment, a reasonable jury would conclude that multiple conspiracies, rather than a single conspiracy, exist. For example, the indictment in this case alleges a broad and ill-defined "conspiracy" amongst the defendants, and unnamed "others", to rig bids from May 2008 to December 2010. No specific dates or instances, however, are provided in the indictment wherein the Defendants rigged bids at public action, or who participated. Moreover, the factual

allegations supporting Count One contain only minimal details about the specific conduct, transactions, individuals, amounts, dates, and the particular acts being charged.

In addition to the examining the face of the indictment, other relevant considerations to determine whether multiple conspiracies exist include the "'nature of the scheme; the identity of the participants; the quality, frequency, and duration of each conspirator's transactions; and the commonality of times and goals.'" *Arbelaez,* 719 F.2d at 1458 (quoting *United States v. Zemek,* 634 F.2d 1159, 1168 (9th Cir. 1980)). Examination of each of these factors, in conjunction with the government's proffered appendixes, further reveals the existence of multiple conspiracies in Count One.

*i. Nature of the Scheme*

The government's theory of the nature of the scheme of conspiring to rig bids is the following: instead of competing at the public auction, the conspirators agreed not to bid against each other for certain properties. One person was designated to bid at the public auction – while outside bidders were either persuaded to go away or join in the scheme – while the rest of the group refrained from bidding. One conspirator ultimately took the property at public auction, and in suppressing the competition, the group was able to obtain properties at public auction at the lowest price possible.

If this conspiracy had occurred on one occasion, with the same conspirators, with respect to a lone property, then perhaps one single conspiracy existed. However, a bid rigging conspiracy is unique: a bid-rigging conspiracy involves sales made to particular victims pursuant to distinct contracts; its scope is limited to those distinct contracts. *United States v. Hayter Oil Co.,* 51 F.3d 1265, 1275 (6th Cir. 1995). Indeed, each time a public auction occurred, different "conspirators" participated, for different properties at different prices under a different contractual agreement. For the government to qualify this as "one" conspiracy, lasting over two and a half years, wherein thousands of different properties were sold to different individuals on different dates is erroneous and disingenuous. In reality, each time the

"conspirators' bid at public auction, that action constituted a different conspiracy.

*ii. Identity of the Participants*

In *Kotteakos v. United States,* 328 U.S. 750, 768-72, the Supreme Court traced the reasons for reversing conviction where the asserted proof of participation in a single conspiracy necessarily involved "more than one" conspiracy. *Id.* at p. 772. The Court noted that "[t]he dangers for transference of guilt from one to another across the line separating conspiracies, subconsciously or otherwise, are so great that no one really can say prejudice to substantial right has not taken place." *Id.* at 773. As such, the government cannot string together several separate and distinct crimes - conspiracies related in kind though they may be – when the only nexus among them lies in the fact that some defendants may have participated in overlapping auctions on certain occasions.

Indeed, examining the government's own documents reveals the existence of multiple alleged bid rigging conspiracies, as well as an over extended application of one unitary, overarching conspiracy. For example, the witnesses and summary of statements in Statements 1-4 of Appendix F relies on declarants charged in *United States v. Yeganeh*, CR-15-00339-PJH. Likewise, the undercover agent's anticipated testimony of coconspirator statements described in 5-12 relies on individuals such as Gregory Casorso, involved or charged in *United States v. Marr*, CR-14-00580-PJH. Finally, statements 13 - 20 involve an undercover agent's testimony of declarants described by the government as part of the conspiracy charged in *United States v. Galloway*, CR-14-00607-PJH.

Simply put, the government improperly seeks to boot strap the alleged conspirator statements in this trial from declarants charged or associated in three distinct separate conspiracies pending before this Court. Such a confusing legal landscape, created by the prosecution, consisting of multiple conspiracies dilutes any meaningful application on 801(d)(2)(E), and further establishes that the single conspiracy in this case really consists of multiple conspiracies.

*iii. Quality, Frequency and Duration of Each Conspirator's Transactions*

This factor also weighs in favor of a finding that multiple conspiracies existed. "A conspiracy is terminated when it's "central criminal purposes" have been accomplished." *Grunewald v. U.S.*, 353 U.S. 391, 401-02 (1957). Here, the "central purpose," as argued by the prosecution, was bid rigging for distressed properties in non-judicial foreclosures which occurred on distinct dates for distinct properties involving distinct individuals. Each alleged conspiracy started and "terminated" when the property was sold to whichever individuals participated in the public auction at that particular date and time.

Moreover, the government's flawed application of coconspirator's statements in "furtherance" of a conspiracy when it's Notice claims Alvin Florida was involved in 300 rigged bids, Rasheed 200 rigged bids, Berry and Diaz 80 rigged bids and Stephan Florida 35 rigged bids. The prosecution's vague and improper "shot gun" scattering approach to the admission of coconspirator statements fails when it simply cannot establish one overall conspiracy given the clear existence of multiple conspiracies, especially in light of the variance in properties amongst the Defendants.

*iv. Commonality of Times and Goals*

The crime of conspiracy is predicated on the existence of a shared objective, *see United States v. Krasovich,* 819 F.2d 253, 255 (9th Cir. 1987), the presence of distinct motives militates strongly in favor of a finding of multiple conspiracies. *See, e.g., United States v. Percival,* 756 F.2d 600, 607 (7th Cir. 1985) ("A single conspiracy cannot be found, however, when there is no overall goal or common purpose."). Here, the evidence will show that the defendants, as well as their purported co-conspirators, acted at variance and antagonistically to one another at the public auctions, and not in concert as part of a continuing agreement as described in the indictment, and at different times. In other words, the defendants' actions at the public auctions compromised distinct and separate conspiratorial agreements in and of itself: to obtain properties on certain date at certain times with different co-conspirators on

each occasion.

### 2. Even if this Court Determines the Purported Co-Conspirator's Statements are Relevant, the Court Should Nevertheless Exclude Them Under Federal Rule of Evidence 403

Even if the Court finds that the purported co-conspirators' statements are admissible under Federal Rule of Evidence 801(d)(2)(E), and that the statements were made during the course of a single conspiracy and in furtherance of a single conspiracy, the Court should exclude these statements from trial under Federal Rule of Evidence 403, on the grounds that the probative value of such statements is substantially outweighed by the danger of unfair prejudice and confusion to the jury.

Fed. R. Evid. 403 states that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury ...." Fed. R. Evid. 403. The Ninth Circuit has held that statements meeting the requirements of Federal Rule of Evidence 801(d)(2)(E) may nevertheless be inadmissible under Federal Rule of Evidence 403. *See United States v. Melendez-Bernal,* 927 F.2d 611, No. 89-10665, 1991 WL 30359, at *5 n.4 (9th Cir. Mar. 7, 1991) (unpublished table decision). Accordingly, this Court should similarly exclude such co-conspirator statements as more prejudicial than probative under Rule 403.

### III. CONCLUSION

For the foregoing reasons, all Defendants respectfully request the Court deem irrelevant, and therefore, inadmissible, any evidence the government seeks to introduce that tends to prove the now-dismissed Mail Fraud Scheme under Fed. R. Evid. 402. In the alternative, Defendants object to this evidence under Fed. R. Evid. 403. Defendants further object to Appendix F as deficient.

Moreover, Defendants object to the introduction of all the co-conspirators statements under Fed. R. Evid. 801(d)(2)(E) due to the existence of multiple conspiracies. The Court should therefore not permit the Government to introduce such statements under its theory of an overarching, all-encompassing "conspiracy." In the alternative, Defendants object to the co-conspirator statements under

Fed. R. Evid. 403.

Dated: September 7, 2016 Respectfully submitted,

          /s/
SHAFFY MOEEL
Attorney for Defendant
ALVIN FLORIDA, JR.

          /s/
STEVEN GRUEL
Attorney for Defendant
ROBERT ALHASHASH RASHEED

          /s/
JOHN FORSYTH
Attorney for Defendant
JOHN LEE BERRY, III

          /s/
EDWIN PRATHER
Attorney for Defendant
REFUGIO DIAZ

          /s/
DARRYL STALLWORTH
Attorney for Defendant
STEPHAN ALEXANDER FLORIDA