SHAFFY MOEEL, ESQ.
Cal State SBN 238732
MOEEL LAW OFFICE
214 Duboce Ave.
San Francisco, CA 94103
Telephone: (415) 735-5021
Facsimile:   (415) 255-8631
Email:        shaffymoeel@gmail.com

Attorney for Defendant
ALVIN FLORIDA JR.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> ALVIN FLORIDA JR., et al., <br><br> Defendants. | CASE NO. CR 14-00582 PJH <br><br><br> Date:   October 12, 2016 <br> Time:   1:30 p.m. <br><br> Before the Honorable Phyllis J. Hamilton <br> United States District Judge |

TO: UNITED STATES OF AMERICA, PLAINTIFF; AND
MANISH KUMAR, ASSISTANT TRIAL ATTORNEY ANTITRUST DIVISION; AND
ALBERT SAMBAT, ASSISTANT TRIAL ATTORNEY ANTITRUST DIVISION; AND
SUSAN ASHLEY MUSSER, TRIAL ATTORNEY ANTITRUST DIVISION, AND TO THE
CLERK OF THE ABOVE-ENTITLED COURT:

PLEASE TAKE NOTICE that on October 12, 2016, at 1:30 p.m., or as soon thereafter as the matter may be heard, in the courtroom of the Honorable Phyllis J. Hamilton, United States Chief District Judge, all defendants, by and through their counsel of record, will move the Honorable Court for an order granting Defendants' Motion in Limine No. 1 and 2.

## DEFENDANTS' JOINT MOTIONS IN LIMINE NO. 1

The defendants seek to admit testimony regarding an analysis of auction sale prices in Alameda County during and after the bid-rigging conspiracy alleged in the indictment. A summary of the type of testimony and exhibits the defense will offer were submitted to the Court in support of the Defendants' Motion to Adjudicate the Government's Sherman Act Allegations Pursuant to the Rule of Reason (Dkt. 146, 147)[1]. This factual analysis showed that following the end of the conspiracy/scheme period, auction prices actually went down, demonstrating that the alleged collusive and fraudulent practices of the defendants did not restrain competition or deprive the beneficiaries of higher prices at the public auctions.

## ARGUMENT

Although this Court denied the defense motion to adjudicate this case based on the rule of reason, the testimony regarding an analysis of auction sale prices during and after the conspiracy period is still crucial to the defense even under a per se theory for several reasons. First, the indictment alleges

---

[1] Pursuant to Criminal Local Rule 17.1-1(b)(9), the identity of the defense's anticipated witness will be disclosed 7 days before the October 12, 2016 pretrial conference.

that the defendants suppressed competition by "purchasing selected properties at public auctions at artificially suppressed prices." See Indictment, ¶ 9.c. The Government alleges that absent the alleged bid-rigging, the defendants would have bid the funds involved in the secondary auction in the public auction, thereby increasing the sales price for the beneficiaries. According to the Government, the difference between the public auction price and the secondary auction price is the measure of the loss to the beneficiaries. While the Government's theory is intuitively appealing, it is actually supported by nothing other than speculation. As we have noted previously, the Government supports its theory of harm to the beneficiaries with the testimony of cooperating defendants who will testify that but for the secondary auctions, they would have bid more at the public auction. This testimony lacks foundation and is speculative at best. The bidders at the secondary auctions repeatedly told the FBI that one of the reasons – and in some cases the only reason – they participated in the secondary auctions was to make money from each other. The evidence will demonstrate that bidders at the secondary auctions routinely participated in them with no intent to purchase the properties, but rather to artificially inflate the bidding to increase the amount of money they would receive from the winning bidder. Similarly, the evidence will show that some of the bidders at the secondary auctions insisted on having two "seats" at the auction. This means that they would have two representatives at the secondary auction, each of whom would be entitled to a separate share of the secondary auction proceeds. Again, this is nothing more than a method for those bidders to inflate the price of the property in order to gain more proceeds from the secondary auction. There was no other reason for insisting on more than one "seat" since they would otherwise still be able to bid for any property they actually wanted to own. Again, the only reason for having two "seats" at the secondary auction is to inflate the prices bid in order to make more money from the other bidders. These inflationary bids were only motivated by profits to be made in the secondary auction and had absolutely no bearing on the prices bid at the public auction. The analysis of auction sale

prices anticipated by the defense is the only known objective evidence of the effect of the alleged conspiracy/scheme on prices bid at the public auctions. It is comprehensive and straightforward, and to date, completely unrebutted. It severely undercuts the Government's allegation that the secondary auction prices would otherwise have been added to the public auction bid prices. The Government must prove the allegations the grand jury voted upon and, similarly, the defendants must be allowed to rebut that allegation by demonstrating that the auction prices were not suppressed at all. This is a factual defense and the requested evidence is key to establishing it. Thus, despite the Court's ruling that this is a per se case for the antitrust charges, the defendants are constitutionally entitled to defend the factual allegations made in the antitrust count. To take that defense away from the defendants would deprive them of their right to present their defense. The Government undoubtedly will cite numerous cases holding that in per se cases, excuses seeking to justify the collusive conduct are not a defense to a per se offense. We agree, but that is beside the point. Claims of stopping ruinous competition, preserving order in the marketplace, or to maintain a fair share of the market are not a defense to a per se antitrust charge. But the anticipated auction sale price analysis evidence is not offered as an excuse for the defendants' behavior. Rather, it is evidence that rebuts a key factual allegation of the charges in the Indictment, i.e., that the defendants' actions artificially suppressed prices at the public auctions. "[T]he Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense,'" *Crane v. Kentucky*, 476 U.S. 683, 690 (1986) (*quoting California v. Trombetta*, 467 U.S.479, 485 (1984)). In *United States v. Nixon*, 418 U.S. 683, 710 (1974), the Supreme Court compelled President Nixon's efforts to produce relevant evidence that he claimed was privileged. In doing so, the Court observed:

'[T]he twofold aim [of criminal justice] is that guilt shall not escape or innocence suffer.' We have elected to employ an adversary system of criminal justice in which the parties contest all issues before a court of law. The need to develop all relevant facts in the adversary system is both fundamental and

comprehensive. The ends of criminal justice would be defeated if judgments were to be founded on a partial or speculative presentation of the facts. The very integrity of the judicial system and public confidence in the system depend on disclosure of the facts, within the framework of the rules of evidence. (*Id.* (*quoting Berger v. United States*, 295 U.S. 78, 88 (1935)). The defendants are entitled to their defense at trial, and in this case that means they are entitled to present evidence that they neither deprived the beneficiaries of money from the proceeds of the public auctions, nor artificially suppressed prices at the auctions. Accordingly, the anticipated auction sale price analysis evidence and similar testimony should be admitted at trial.

## DEFENDANT'S MOTION IN LIMINE 2

On August 1, 2016, in *United States v. Giraudo*, et al., No. CR-14-534 CRB, Judge Breyer granted the defendants' motion to suppress the "courthouse steps" audio recordings the government made in that case on the grounds that the defendants had a reasonable expectation of privacy in their conversations on the San Mateo County courthouse steps and the recordings were unlawfully made Case 4:14-cr-00580-PJH without a warrant or other legal authorization[2]. *See id*., Dkt. 149.5 The recordings in San Mateo were made in 2009 and 2010. *Id*. at 2. In this case, the "courthouse steps" recordings began in March 2010, probably more than a year after the San Mateo recordings had begun. *See* Declaration or Roahn Wynar ("Wynar Decl."), Dkt. 86-1, ¶ 8. The government's witness list includes a number of individuals who also participated in the San Mateo County auctions and who were likely illegally recorded and/or who may have been persuaded to plead guilty because of the recordings. Many of those unlawful recordings may have led the government to evidence it intends to introduce in this case, including the

---

[2] This Court denied the same motion filed by the defendant's in this case. See Dkt. 142. The recordings here were made pursuant to the same authorization, as the defense noted in its briefing in this case. See Dkt. 104 at 1, n. 1. The defendants intend to file a motion for reconsideration.

testimony of alleged coconspirators[3]. The recordings undoubtedly shaped the government's investigation in this case. As the Supreme Court held long ago in *Silverthorne Lumber v. United States*, 251 U.S. 385, 392 (1920): The essence of [the Fourth Amendment] provision forbidding the acquisition of evidence in a certain way is that not merely evidence so acquired shall not be used before the Court but that it shall not be used at all. Otherwise, the Fourth Amendment would be "reduce[d] . . . to a form of words." *Id.*; *see also Alderman v. United States*, 394 U.S. 165, 170, 181 (1969) (exclusionary rule requires suppression of any evidence unlawfully seized as well as "fruits of such evidence," i.e., evidence that "has been come at by the exploitation of that illegality"); *Wong Sun v. United States*, 371 U.S. 471, 485 (1963) (verbal evidence which derives from Fourth Amendment violation "is no less the 'fruit' of official illegality than the more common tangible fruits of unwarranted intrusion"). It is the government that has the ultimate burden of persuasion to show that it's evidence is untainted. *Id.* at 183. The defense therefore moves in limine to exclude any and all evidence derived from the unlawful recordings made in San Mateo and requests an evidentiary hearing to determine what evidence is so derived.

Dated: September 14, 2016　　　　　　　　　　　Respectfully Submitted,


　　　　　　　　　　　　　　　　　　　　____/s/_____

　　　　　　　　　　　　　　　　　　　　SHAFFY MOEEL

　　　　　　　　　　　　　　　　　　　　Attorney for Defendant ALVIN FLORIDA,JR.

　　　　　　　　　　　　　　　　　　　　____/s/_____

---

[3] The defense has not had the time or the resources to review all of the recordings that were made in other counties, particularly because the government did not produce transcripts of any recordings to the defense. However, the defense believes that the government witnesses in this case that also participated in the San Mateo County auctions and were likely recorded illegally include: John Shiells, Douglas Ditmer, Brian McKinzie, and Miguel De Sanz.

STEVEN GRUEL

Attorney for Defendant ROBERT ALHASHASH RASHEED

_____/s/_____

JOHN FORSYTH

Attorney for Defendant JOHN LEE BERRY, III

_____/s/_____

EDWIN PRATHER

Attorney for Defendant REFUGIO DIAZ

_____/s/_____

DARRYL STALLWORTH

Attorney for Defendant STEPHAN ALEXANDER FLORIDA