EDWIN PRATHER, CABN 190536
MAX MIZONO, CABN 286573
PRATHER LAW OFFICES
461 Bush Street, Suite 350
San Francisco, CA 94108
Telephone: (415) 881-7774
Email: edwin@pratherlawoffices.com
          max@pratherlawoffices.com

Attorneys for Defendant
REFUGIO DIAZ

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>ALVIN FLORIDA JR.,<br>ROBERT ALHASHASH RASHEED,<br>JOHN LEE BERRY, III,<br>REFUGIO DIAZ, and<br>STEPHAN ALEXANDER FLORIDA.<br><br>　　　　Defendants. | Case No.: CR 14-00582-PJH<br><br>**DEFENDANTS' JOINT PROPOSED JURY INSTRUCTIONS**<br><br>Pretrial Conference Date: October 12, 2016<br>Time: 1:30 p.m.<br>Judge: The Honorable Phyllis J. Hamilton<br><br>Trial Date: October 31, 2016 |

　　　　The defendants Alvin Florida, Jr., Robert Alhashash Rasheed, John Lee Berry, III, Refugio Diaz, and Stephan Alexander Florida jointly submit the attached proposed jury instructions, in addition to the Parties' Joint Proposed Jury Instruction, but reserve the right to supplement or modify these instructions as necessary.

# PROPOSED JURY INSTRUCTION NO. 1

# OPINION EVIDENCE, EXPERT WITNESSES

You [have heard] [are about to hear] testimony from [*name*] who [testified] [will testify] to opinions and the reasons for [his] [her] opinions. This opinion testimony is allowed because of the education or experience of this witness.

Such opinion testimony should be judged just like any other testimony. You may accept it or reject it, and give it as much weight as you think it deserves, considering the witness's education and experience, the reasons given for the opinion, and all the other evidence in the case.

Support: Ninth Circuit Manual of Model Criminal Jury Instructions (2010) (hereafter "Model Instruction"), Model Instruction 4.14

# PROPOSED JURY INSTRUCTION NO. 2

I will now instruct you on the law as it applies to the specific charges brought against the defendants in this case. There are five defendants in this case: Alvin Florida, Jr., Robert Alhashash Rasheed, John Lee Berry, III, Refugio Diaz, and Stephan Alexander Florida. The charges brought against the defendants relate to their alleged activity at foreclosure auctions in Alameda County.

All five defendants are charged in Count One with a conspiracy in violation of the Sherman Antitrust Act, Section 1 of Title 15 of the United States Code, at the foreclosure auctions in Alameda County.

## **Separate Crime, Separate Consideration**

A separate crime is charged in Count One against each named defendant. You must reach a separate unanimous decision on the elements of Count One against each named defendant.

Although the defendants are being tried together, you must give separate consideration to each defendant. In doing so, you must determine which evidence in the case applies to each defendant, disregarding any evidence admitted solely against some other defendant. The fact that you may find one of the defendants guilty or not guilty should not control your verdict as to any other defendant.

You are only to determine whether each defendant is guilty or not guilty of the charge against him in the Indictment. Your determination must be made only from the evidence in the case. The defendants are not on trial for any conduct or offenses not charged in the Indictment. You should consider evidence about the acts, statements, and intentions of others, or evidence about other acts of a defendant, only as they relate to the charge against each defendant.

Support: *United States v. Katakis*, No. CR S-11-511 WBS (E.D. Cal. 2014)

# PROPOSED JURY INSTRUCTION NO. 3

# CONSPIRACY – ELEMENTS

All five defendants are charged in Count One of the indictment with conspiring to suppress and restrain competition by rigging bids to obtain hundreds of selected properties offered in public auctions in Alameda County in unreasonable restraint of trade and commerce in violation of Section One of Title 15 of the United States Code. In order for any defendant to be found guilty of the conspiracy in Count One, the government must prove each of the following elements beyond a reasonable doubt as to that defendant:

First, beginning on or about May 2008, and ending on or about December 2010, the defendant made an agreement with one or more other persons to suppress and restrain competition by rigging bids to obtain hundreds of selected properties offered in public auction in Alameda County in reasonable restraint of trade and commerce as charged in the indictment;

Second, the defendant became a member of the conspiracy knowing of at least one of its objects and intending to help accomplish it;

Third, one of the members of the conspiracy performed at least one overt act on or after May 2008 for the purpose of carrying out the conspiracy; and

Fourth, that the conspiracy either affected interstate commerce or occurred within the flow of interstate commerce.

I will now explain to you the elements of a conspiracy.

A conspiracy is a kind of criminal partnership – an agreement of two or more persons to commit one or more crimes. The crime of conspiracy is the agreement to do something unlawful.

For a conspiracy to have existed, it is not necessary that the conspirators made a formal agreement or that they agreed on every detail of the conspiracy. It is not enough, however, that they

simply met, discussed matters of common interest, acted in similar ways, or perhaps helped one another. You must find that there was a plan to commit the crimes alleged in the indictment as an object of the conspiracy with all of you agreeing as to the particular crime which the conspirators agreed to commit.

One becomes a member of a conspiracy by willfully participating in the unlawful plan with the intent to advance or further some object or purpose of the conspiracy. Furthermore, one who willfully joins an existing conspiracy is as responsible for it as the originators. On the other hand, one who has no knowledge of a conspiracy, but happens to act in a way which furthers some object or purpose the conspiracy, does not thereby become a conspirator. Similarly, a person does not become a conspirator merely by associating with one or more persons who are conspirators, nor merely by knowing that a conspiracy exists.

An overt act does not itself have to be unlawful. A lawful act may be an element of a conspiracy if it was done for the purpose of carrying out the conspiracy. The government is not required to prove that the defendant personally did one of the overt acts.

Support: Model Instruction 8.20 [modified]

# PROPOSED JURY INSTRUCTION NO. 4

## MULTIPLE CONSPIRACIES

You must unanimously decide whether the specific conspiracy charged in Count One of the indictment existed, and if so, who at least some of its members were. If you find that the conspiracy charged did not exist, then you must return a not guilty verdict, even though you may find that some other conspiracy or conspiracies existed. Similarly, if you find that any defendant was not a member of the charged conspiracy, then you must find that defendant not guilty, even though that defendant may have been a member of some other conspiracy or conspiracies.

Support: Model Instruction 8.22 [modified]; *see also United States v. Lapier*, 796 F.3d 1090 (9th Cir. 2015) ("jurors must unanimously agree that the defendant is guilty of participating in a particular conspiracy – *i.e.,* of forming an agreement with at least one other particular individual to pursue a criminal goal)

# PROPOSED JURY INSTRUCTION NO. 5

Under the first element and for the purposes of a violation of the Sherman Antitrust Act, a conspiracy between two or more actual or potential competitors to eliminate, reduce, or interfere with competition at an auction can occur in different ways. It can be an agreement among some or all of the competitors about the prices to be bid, who should be the successful bidder, who should bid high, who should bid low, or who should refrain from bidding; or any other agreement with respect to bidding that affects, limits, or avoids competition among some or all of the bidders. But to find any defendant guilty, you must find, beyond a reasonable doubt, that that particular defendant's intent was to eliminate, reduce, or interfere with competition as charged in the indictment and that he agreed with another to do so.

Evidence of similarity of business practices of the defendants and alleged coconspirators does not alone establish an agreement to rig bids, since such activities may be consistent with ordinary and proper competitive behavior in a free and open market. The mere fact that one or more defendants may have unilaterally refrained from bidding, however, does not violate the Sherman Antitrust Act. Where a person, in the exercise of his own independent judgment, and not by agreement with his competitors, chooses not to bid on a particular auction, there is no violation. It is only where such acts are done pursuant to an agreement between two or more actual or potential competitors that a violation occurs. A non-competitor can also join a conspiracy amongst competitors.

The aim and result of every agreement that violates the Sherman Antitrust Act, if successful, is the elimination of one form of competition. Every such agreement is unlawful, regardless of the motives of the parties or any economic justification. Therefore, if you find that a conspiracy in violation of the Sherman Antitrust Act existed, it does not matter whether the sales prices were too high or low, reasonable or unreasonable, fair or unfair, or whether members of the conspiracy may have had good

motives or thought that what they were doing was legal.  It is also not a defense that the conspirators actually competed with each other in some manner or that they did not conspire to eliminate all competition.  But you must find an agreement between two or more actual or potential competitors to eliminate, reduce, or interfere with competition.

Individuals are not actual or potential competitors for purposes of the Sherman Antitrust Act if they were engaged in a legitimate joint venture or partnership, and were thus acting together as a single entity.  A joint venture or partnership exists when persons who would otherwise be competitors combine their resources for a common purpose and share the risks as well as the opportunities for gain.  A joint venture or partnership is legitimate only if it has a purpose other than the very crime charged; here, the agreement to eliminate, reduce, or interfere with competition at the foreclosure auctions.  It is not necessary that members of a joint venture or partnership share equally in the risks or gains.

One or more members of even a legitimate joint venture or partnership cannot lawfully agree to eliminate, reduce, or interfere with competition with a competitor outside the joint venture or partnership.  However, if one member of a joint venture or partnership agrees with an outside competitor in this way, another individual's membership in the joint venture or partnership alone does not establish that he is also part of the agreement.  Rather, as I instructed you earlier, to find a defendant guilty of a Sherman Antitrust Act violation, you must find that he knowingly became a member of the conspiracy to eliminate, reduce, or interfere with competition.

Support: *United States v. Katakis*, No. CR S-11-511 WBS (E.D. Cal. 2014), Instruction No. 15, [modified]; American Bar Association, Section of Antirust, Model Jury Instructions in Criminal Antitrust Cases (2009), Instruction 3.G – Bid Rigging, at p. 62

Defendants' Joint Proposed Jury Instructions [Case No.: CR 14-00582-PJH]

8

# PROPOSED JURY INSTRUCTION NO. 6

A winning bidder does not violate the Sherman Antitrust Act simply by selling his right to purchase a property won at a foreclosure auction. After a foreclosure auction sale, the winning bidder may pay the amount of the winning bid and take title to the property, or the winning bidder may sell his right to purchase the property to another individual or entity. That individual or entity may then take title in the individual or entity's own name. There is no requirement that the winning bidder list himself or herself on the receipt of funds form. It violates the Sherman Antirust Act, however, for a winning bidder to sell his right to purchase a property as part of a conspiracy between two or more actual or potential competitors to eliminate, reduce, or interfere with competition.

Prospective bidders may hire agents to bid on their behalf, and actual or potential competitors may agree to use a common agent in order to bid on their behalf, but prospective bidders who would otherwise be competitors may not agree to use a common agent as a means to eliminate, reduce or interfere with competition.

The law does not require an auctioneer at a foreclosure auction to cry properties in a certain order, verify funds prior to an auction, or collect money immediately following a sale.

Support: *United States v. Katakis*, No. CR S-11-511 WBS (E.D. Cal. 2014), Instruction No. 16

# PROPOSED JURY INSTRUCTION NO. 7

# KNOWINGLY – DEFINED

As previously noted, the second element the government must prove beyond a reasonable doubt for you to find any defendant guilty of bid-rigging is that the defendant knowingly joined the conspiracy charged in the indictment. An act is done knowingly if the defendant is aware of the act and does not [act] [fail to act] through ignorance, mistake or accident. Therefore, before you convict any defendant, the evidence must establish that the defendant joined the conspiracy to rig bids with the intent to aid or advance the object or purpose of the conspiracy.

The government is not required to prove that the defendant knew that his acts or omissions were unlawful. You may consider evidence of the defendant's words, acts, or omissions, along with all the other evidence, in deciding whether the defendant acted knowingly.

Support: Model Instruction 5.6 [modified]; American Bar Association, Section of Antitrust, Model Jury Instructions in Criminal Antitrust Cases (2009), Instruction 3.y – "Knowingly" Joining the Conspiracy, at p. 71.

# PROPOSED JURY INSTRUCTION NO. 8

# INTERSTATE COMMERCE

The fourth element of an offense prohibited by the Sherman Act is that the alleged unlawful conduct must involve interstate trade or commerce. The government must prove beyond a reasonable doubt that the conspiracy charged in the indictment either occurred in the flow of interstate commerce of affected interstate commerce in goods and/or services.

The term "interstate commerce" includes transactions that move across state lines or that are in a continuous flow of commerce from the commencement of their journey in one state until their final destination in a different state. The conspiracy charged in the indictment occurred in the flow of interstate commerce if at least one defendant or one coconspirator, in carrying out the charged conspiracy, crossed state lines, or transported produce or performed services across state lines. If the conduct challenged in the indictment involves transaction that are in the flow of commerce, the interstate commerce element is satisfied and the size of any such transaction is of no significance.

The term "interstate commerce" also includes transactions that occur entirely within a state and are not part of a larger interstate transaction, if the conduct challenged in the indictment had an effect on some other appreciable activity occurring in interstate commerce. A conspiracy may have an effect on interstate commerce even though some or all of the conspirators do not themselves engage in interstate commerce and have confined their activities to a single state. Even though the defendant's activities may be completely local in nature, you may find that the conspiracy involved interstate commerce, but only if the defendant's activities affected more than an insignificant amount of trade between the states. In determining whether the charged conspiracy has had such an effect on interstate commerce, you may add together the total amount of all of the interstate transactions conducted by the conspirators in furtherance of the conspiracy.

Although the government must prove beyond a reasonable doubt that the conspiracy charged in the indictment either affected interstate commerce or occurred within the flow of interstate commerce, the government's proof need not quantify or value any adverse impact of the charged conspiracy or show that the charged conspiracy had any anticompetitive effect.

Proof of interstate commerce as to one defendant or coconspirator in the conspiracy charged in the indictment satisfies the interstate commerce element as to any defendant.

Support: American Bar Association, Section of Antitrust, Model Jury Instructions in Criminal Antitrust Cases (2009), Instruction 3.N – Interstate Commerce, at pp. 82-83.

# PROPOSED JURY INSTRUCTION NO. 9

# RULE OF REASON

Under the Sherman Antitrust Act, a restraint of trade is illegal only if it is found to be unreasonable. This means that even if you find that one or more defendants made an agreement to obtain hundreds of selected properties offered in public auctions in restraint of trade and commerce as charged in the indictment, you may only find any defendant guilty if you find that conduct to be unreasonable.

In making this determination, you must first determine whether the government has proven that the challenged restraint has resulted in a substantial harm to competition in a relevant product and geographic market. If you find that the government has proven that the challenged restraint results in a substantial harm to competition in a relevant market, then you must consider whether the restraint produces countervailing competitive benefits. If you find that it does, then you must balance the competitive harm against the competitive benefit. The challenged restraint is illegal under Section 1 of the Sherman Antitrust Act only if you find that the competitive harm substantially outweighs the competitive benefit. I will now review each step of the analysis in more detail.

Support: ABA Section of Antitrust Law, Model Jury Instructions in Civil Antitrust Cases (2005), Instruction 3A; *Paladin Assocs. v. Montana Power Co.*, 328 F.3d 1145, 1155 (9th Cir. 2003); *Love v. Basque Cartel*, 873 F.Supp. 563, 577 (D. Wyo. 1995); *United States v. SG Interests I, Ltd.*, 2012 U.S. Dist. LEXIS 176310, *15 (D. Colo. 2012); *Pennsylvania Avenue Funds v. Borey*, 569 F.Supp.2d 1126, 1133 (W.D. Wash. 2008); *Kearney v. Taylor*, 56 U.S. 494, 520 (1853); *In re Beck Industries, Inc.*, 605 F.2d 624, 635-636 (2d. Cir. 1979); *State Oil Co. v. Khan*, 522 U.S. 3, 10 (1997); *National Soc'y of Prof'l Eng'rs v. United States*, 435 U.S. 679, 691 (1978); *Continental T. V., Inc. v. GTE Sylvania, Inc.*, 433 U.S. 36 (1977); *California Dental Ass'n v. FTC*, 224 F.3d 942, 947-54 (9th Cir. 2000); *Metro Indus. v. Sammi Corp.*, 82 F.3d 839, 843 (9th Cir. 1996); *Wisconsin Music Network, Inc. v. Muzak Ltd. P'ship*, 5 F.3d 218, 222 (7th Cir. 1993); *Capital Imaging Assocs. v. Mohawk Valley Med. Assocs.*, 996 F.2d 537, 543 (2d Cir. 1993); *United States v. All Star Indus.*, 962 F.2d 465, 468 (5th Cir. 1992); *United States v. Suntar Roofing, Inc.*, 897 (10th Cir. 1990); *Murrow Furniture Galleries, Inc. v. Thomasville Furniture Indus.*, 889 F.2d 524, 527 (4th Cir. 1989).

# PROPOSED JURY INSTRUCTION NO. 10

# RULE OF REASON – PROOF OF COMPETITIVE HARM

As I mentioned, in order to prove that the challenged restraint is unreasonable, the government first must demonstrate that the restraint has resulted in a substantial harm to competition. Although it may be relevant to the inquiry, harm to a single competitor or group of competitors does not necessarily mean that there has been harm to competition generally.

Furthermore, the government must show that the harm to competition occurred in an identified market, known as a "relevant market." There are two aspects to a relevant market. The first aspect is known as the relevant product market. The second aspect is known as the relevant geographic market. It is the government's burden to prove the existence of a relevant market. I will address the question of a relevant market in greater detail momentarily.

If you find that the government has proven the existence of a relevant market, then you must determine whether the government also has proven that the challenged restraint has a substantial harmful effect on competition in that market. A harmful effect on competition, or competitive harm, refers to a reduction in competition that results in the loss of some of the benefits of competition. If the challenged conduct has not resulted in the loss of some of the benefits of competition, then there has been no competitive harm and you should find that the challenged conduct was not unreasonable.

In determining whether the challenged restraint has produced competitive harm, you may look at the following factors: the effect of the restraint on competition; the purpose and nature of the restraint; the nature and structure of the relevant market, both before and after the restraint was imposed; the number of competitors in the relevant market and the level of competition among them, both before and after the restraint was imposed; and whether defendants and their alleged co-conspirators possessed "market power."

The last factor mentioned, market power, has been defined as an ability to profitably raise prices above those that would be charged in a competitive market for a sustained period of time. A firm that possesses market power generally can charge higher prices for the same goods or services than a firm in the same market that does not possess market power. The ability to charge higher prices for better products or services, however, is not market power. An important factor in determining whether a defendant possesses market power is the defendant's market share; that is, its percentage of the products or services sold in the relevant market by all competitors. If a defendant does not possess a substantial market share, it is less likely that it possesses market power. If a defendant does not possess this kind of power, then it is less likely that the challenged restraint has resulted in a substantial harmful effect on competition in the market.

Support: ABA Section of Antitrust Law, Model Jury Instructions in Civil Antitrust Cases (2005), Instruction 3B; *Paladin Assocs. v. Montana Power Co.*, 328 F.3d 1145, 1155 (9th Cir. 2003); *Love v. Basque Cartel*, 873 F.Supp. 563, 577 (D. Wyo. 1995); *United States v. SG Interests I, Ltd.*, 2012 U.S. Dist. LEXIS 176310, *15 (D. Colo. 2012); *Pennsylvania Avenue Funds v. Borey*, 569 F.Supp.2d 1126, 1133 (W.D. Wash. 2008); *Kearney v. Taylor*, 56 U.S. 494, 520 (1853); *In re Beck Industries, Inc.*, 605 F.2d 624, 635-636 (2d. Cir. 1979); *NYNEX v. Discon, Inc.*, 525 US 128, 139 (1998); *NCAA v. Board of Regents,* 468 U.S. 81, 109 n. 38 (1984); *Pool Water Prods. v. Olin Corp.*, 258 F.3d 1024, 1036 (9th Cir. 2001); *Indeck Energy Servs. v. rgy Co.*, 250 F.3d 972, 977 (6th Cir. 2000); *Metro Indus., Inc. v. Sammi Corp.*, 82 F.3d 839, 844-45 (9th Cir. 1996).

# PROPOSED JURY INSTRUCTION NO. 11

# RULE OF REASON – RELEVANT MARKET

There are two aspects you must consider in determining whether the government has met its burden to prove the relevant market beyond a reasonable doubt. The first is the relevant product market; the second is the relevant geographic market.

The basic idea of a relevant product market is that the products within it are reasonable substitutes for each other from the buyer's point of view; that is, the products compete with each other. In other words, the relevant product market includes the products that a consumer believes are reasonably interchangeable or reasonable substitutes for each other. This is a practical test with reference to actual behavior of buyers and marketing efforts of sellers. Products need not be identical or precisely interchangeable as long as they are reasonable substitutes.

To determine whether products are reasonable substitutes for each other, you should consider whether a small but significant permanent increase in the price of one product would result in a substantial number of consumers switching from that product to another. If you find that such switching would occur, then you may conclude that the products are in the same product market.

In evaluating whether various products are reasonably interchangeable or are reasonable substitutes for each other, you may also consider: (1) buyers' views on whether the products are interchangeable; (2) the relationship between the price of one product and sales of another; (3) the presence or absence of specialized vendors; (4) the perceptions of either industry or the public as to whether the products are in separate markets; (5) the views of the government and defendant regarding who the respective competitors are; and (6) the existence or absence of different customer groups or distribution channels.

The relevant geographic market is the area in which the defendant faces competition from other

firms that compete in the relevant product market and to which customers can reasonably turn for purchases. When analyzing the relevant geographic market, you should consider whether changes in prices or product offerings in one area have substantial effects on prices or sales in another area, which would tend to show that both areas are in the same relevant geographic market. The geographic market may be as large as global or nationwide, or as small as a single town or even smaller. The government has the burden of proving the relevant geographic market beyond a reasonable doubt.

If, after considering all the evidence, you find that the government has proven beyond a reasonable doubt both a relevant product market and a relevant geographic market, then you must find that the government has met the relevant market requirement and you must consider the remaining allegations of the indictment. If you find that the government has not proven beyond a reasonable doubt either a relevant product market or a relevant geographic market, then you must find the defendants not guilty.

Support: ABA Section of Antitrust Law, Model Jury Instructions in Civil Antitrust Cases (2005), Instruction 3A; *Paladin Assocs. v. Montana Power Co.*, 328 F.3d 1145, 1155 (9th Cir. 2003); *Love v. Basque Cartel*, 873 F.Supp. 563, 577 (D. Wyo. 1995); *United States v. SG Interests I, Ltd.*, 2012 U.S. Dist. LEXIS 176310, *15 (D. Colo. 2012); *Pennsylvania Avenue Funds v. Borey*, 569 F.Supp.2d 1126, 1133 (W.D. Wash. 2008); *Kearney v. Taylor*, 56 U.S. 494, 520 (1853); *In re Beck Industries, Inc.*, 605 F.2d 624, 635-636 (2d. Cir. 1979); *United States v. E.I. du Pont de Nemours & Co.*, 351 U.S. 377, 395 (1956); *United States v. Microsoft Corp.*, 352 F.3d 34, 52-54 (D.C. Cir. 2001); *Intergraph Corp. v. Intel Corp.*, 195 F.3d 1346, 1355 (Fed. Cir. 1999); *AD/SAT, A Division of Skylight, Inc. v. Associated Press,* 181 (2d Cir. 1999); *Metro Indus., Inc. v. Sammi Corp.*, 82 F.3d 839, 844-45 (9th Cir. 1996).

# PROPOSED JURY INSTRUCTION NO. 12

# RULE OF REASON – BALANCING THE COMPETITIVE EFFECTS

If you find that the government has proved that the challenged restraint resulted in substantial harm to competition in a relevant market, then you next must determine whether the restraint also benefits competition in other ways. If you find that the challenged restraint results in competitive benefits, then you also must consider whether the restraint was reasonably necessary to achieve the benefit. If the government proves that the same benefits could have been readily achieved by other, reasonably available alternative means that create substantially less harm to competition, then they cannot be used to justify the restraint.

If you find that the challenged restraint was reasonably necessary to achieve competitive benefits, then you must balance those competitive benefits against the competitive harm resulting from the same restraint. If the competitive harm substantially outweighs the competitive benefits, then the challenged restraint is unreasonable. If the competitive harm does not substantially outweigh the competitive benefits, then the challenged restraint is not unreasonable. In conducting this analysis, you must consider the benefits and harm to competition and consumers, not just to a single competitor or group of competitors.

Support: ABA Section of Antitrust Law, Model Jury Instructions in Civil Antitrust Cases (2005), Instructions 3C and 3D; *Paladin Assocs. v. Montana Power Co.*, 328 F.3d 1145, 1155 (9th Cir. 2003); *Love v. Basque Cartel*, 873 F.Supp. 563, 577 (D. Wyo. 1995); *United States v. SG Interests I, Ltd.*, 2012 U.S. Dist. LEXIS 176310, *15 (D. Colo. 2012); *Pennsylvania Avenue Funds v. Borey*, 569 F.Supp.2d 1126, 1133 (W.D. Wash. 2008); *Kearney v. Taylor*, 56 U.S. 494, 520 (1853); *In re Beck Industries, Inc.*, 605 F.2d 624, 635-636 (2d. Cir. 1979); ABA Section of Antitrust Law, 1 *Antitrust Law Developments* 70-74 (6th ed. 2007) (collecting cases); *Continental TV, Inc. v. GTE Sylvania, Inc.*, 433 U.S. 36, 49-50 (1977); *Geneva Pharms. Tech. Corp. v. Sullivan v. National Football League,* 34 F.3d 1091, 1111 (1st Cir. 1994); *Bhan v. NME Hospitals, Inc.*, 929 F.2d 1404, 1413 (9th Cir. 1991).

Dated: September 14, 2016

Respectfully submitted,

　　　　/s/
SHAFFY MOEEL
Attorney for Defendant
ALVIN FLORIDA, JR.


　　　　/s/
STEVEN GRUEL
Attorney for Defendant
ROBERT ALHASHASH RASHEED


　　　　/s/
JOHN FORSYTH
Attorney for Defendant
JOHN LEE BERRY, III


　　　　/s/
EDWIN PRATHER
Attorney for Defendant
REFUGIO DIAZ


　　　　/s/
DARRYL STALLWORTH
Attorney for Defendant
STEPHAN ALEXANDER FLORIDA