MANISH KUMAR (CSBN 269493)
ALBERT B. SAMBAT (CSBN 236472)
SUSAN A. MUSSER (MOBN 63116)
ASHLEY EICKHOF (CSBN 307143)
U.S. Department of Justice
Antitrust Division
450 Golden Gate Avenue
Box 36046, Room 10-0101
San Francisco, CA 94102
albert.sambat@usdoj.gov
Telephone: (415) 934-5300

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ALVIN FLORIDA, JR.,<br>JOHN LEE BERRY, III, and<br>REFUGIO DIAZ,<br><br>Defendants. | CASE NO. CR 4:14-00582 PJH<br><br>**UNITED STATES' CONSOLIDATED OPPOSITION TO DEFENDANTS ALVIN FLORIDA, JR., JOHN LEE BERRY, III, AND REFUGIO DIAZ'S MOTIONS TO SEVER**<br><br>Pretrial Conference: October 12, 2016<br>Court: Hon. Chief Judge Phyllis J. Hamilton<br>Trial Date: October 31, 2016 |

**INTRODUCTION**

The indictment in the above-captioned case charges five of the fourteen nonpleading defendants, all of whom were part of real-estate investment entities owned by Alvin Florida, with bid rigging. Each of the defendants played their part in the conspiracy: Alvin Florida was the ringleader of the group. He attended the auctions and rigged bids in Alameda County with his employees John Berry, Refugio Diaz, and Stephan Florida. Rasheed was a client of Alvin Florida who also attended the auctions and rigged bids with Alvin Florida and his employees during the time period of the charged conspiracy.

Despite the obvious relationship among the five defendants, in three separate motions, defendants Alvin Florida, John Berry, and Refugio Diaz each ask the Court for a separate trial under Rule 14 of the Federal Rules of Criminal Procedure. Defendants argue that the government will use statements that codefendant Rasheed made to the FBI on January 11, 2011, to implicate them at trial and that, under *Bruton v. United States*, 391 U.S. 123 (1968), their Sixth Amendment right to confront witnesses may be violated if Rasheed does not testify. This is the same argument advanced by three of the defendants in *United States v. Michael Marr, et al.*, No. CR 14-00580 PJH, Dkts. 146, 147, and 149. Defendants are wrong. The potential *Bruton* issue here is avoidable and does not require severing any defendant, let alone three. The government will introduce only those portions of Rasheed's statements that do not refer to any codefendant through the testimony of FBI Special Agent Timothy Paulson. The government will not elicit testimony about Rasheed's co-implicating statements and will object to any cross-examination questions that could do the same, thus preventing the introduction of any statements that run afoul of *Bruton*.

In addition, defendants John Berry and Refugio Diaz appear to argue that they should be severed because the "vast majority" of the evidence proffered by the government in its notice of coconspirator statements (Dkt. 194) allegedly does not implicate them, but rather, codefendant Alvin Florida. This guilt by association or spillover argument is without merit. First, defendants Berry and Diaz are charged in Count One with participating in the same conspiracy to rig bids in Alameda County as codefendant Alvin Florida. A defendant who knowingly joins a conspiracy is just as responsible for all of the acts of their coconspirators. Second, Berry and Diaz cannot show that a single trial with Alvin Florida is so manifestly prejudicial that it outweighs the dominant concern with judicial economy.

Finally, defendants' motions are untimely, coming well past the April 6, 2016 deadline for pretrial motions. Defendants have had Rasheed's statement to the FBI for over thirteen months before filing their motion. And yet, months past the motions deadline, defendants now ask the Court to sever this trial into four separate trials. For all of these reasons, the Court should deny defendants' motions.

**ARGUMENT**

**I.    DEFENDANTS NEED NOT BE SEVERED TO AVOID A *BRUTON* VIOLATION**

In *Bruton*, the Supreme Court ruled that the Sixth Amendment's Confrontation Clause precluded the admission of a nontestifying codefendant's co-implicating confession because the prejudicial effect of that evidence would make it extremely difficult for a jury to obey the trial court's limiting instruction. *Bruton*, 391 U.S. at 137. *Bruton* does not apply to the confession of one codefendant, however, if that confession does not refer to the other defendant and the jury is instructed that the confession is received as evidence only against the confessing defendant. *Richardson v. Marsh*, 481 U.S. 200, 210 (1987). In *Richardson*, this was accomplished by redacting the defendant's admission to eliminate the codefendant's name and any other reference to the codefendant's existence. *Id.* The *Richardson* Court thus distinguished *Bruton* by noting that the confession in *Bruton* "expressly implicated the defendant as his accomplice." *Id.* at 208. In *Richardson*, the confession could be introduced because it was not facially incriminating and "became so only when linked with evidence introduced later at trial." *Id.* The Ninth Circuit has also recognized that the government can avoid a *Bruton* problem simply by limiting any testimony about the confession to statements that do not refer to codefendants. *United States v. Yarbrough*, 852 F.2d 1522, 1537 (9th Cir. 1988) (holding that an FBI agent's testimony regarding the defendant's confession did not violate *Bruton* where "[t]he agent testifying to the confession never mentioned any of the nontestifying appellants.").

Here, in a voluntary interview on January 11, 2011, defendant Rasheed told the FBI about his involvement in the charged conspiracy. During the interview, defendant Rasheed provided details about how the conspiracy operated and outlined his own participation. He explained how there was an on-going agreement related to properties for sale whereby members would agree not to bid against one another during the auctions process and hold a second auction after one of the known parties purchased

//

a property. While defendants Florida and Berry are correct that Rasheed did implicate them and other coconspirators during his interview, the government will not introduce the interview write-up itself at trial. Instead, the government will introduce the statements through the testimony of Special Agent Paulson. This eliminates the risk that the redactions would be made in such a way as to improperly influence the jury. *See Gray v. Maryland*, 523 U.S. 185, 197 (1998) (holding that the *Bruton* rule extends to redacted confessions in which the name of the defendant is replaced with a blank space, the word "deleted," or similarly obvious indications of alteration).

A great deal of defendant Rasheed's statement may be introduced without violating *Bruton*. Rasheed's self-implicating statements are not so intertwined with references to codefendants that they cannot be introduced in isolation. For example, the government may elicit testimony from Special Agent Paulson about any of the following statements by Rasheed (excerpted from the FBI 302s) without running afoul of *Bruton*:

- This group had an on-going agreement related to properties for sale that meet two conditions. The first condition is that the property does not have any interest outside the group. The second condition is that more than one member of the group is interested in the property. Decl. of Albert B. Sambat ("Sambat Decl."), Ex. A at 2.

- For properties fitting this description, the group agrees to not bid against one another during the auction and holds a second auction after one of the known parties purchases the property. *Id.* at 3.

- Body language, winks and shoulder taps are used to notify the group when a second auction is going to happen. After receiving the signal, the group stops bidding and allows one person to purchase the property. *Id.*

- Sometimes one of the members says "lets work it around" instead of using winks, shoulder taps or other types of body language. Rasheed understands this to mean stop bidding and join the group for the second auction. *Id.*

- Rasheed found that if you don't participate in the second round auction, the group will attempt to make you bid so much on a property during the first auction that you lose money. *Id.*

- The second auction takes place next to the stairs at the courthouse and a sheet of paper is used to track the bids. *Id.*

- If the person who purchased the property from the original auction wants to keep the property, that person pays all the members of the group a certain amount to

> cancel the second auction. If they don't want to keep the property, the other members bid on the property until the highest bid wins. Either way, everyone at the second auction is paid something. *Id.*

- The money paid at the second auction is commonly referred to as "referral." Rasheed has received referral payments and paid referral payments. *Id.*

- When Rasheed pays a referral fee he uses his PTI checking account. In the memo section of the check, Rasheed writes the word referral. Any checks that have the word referral in the memo section means that check was used as a payment on a debt that was created during a second auction. *Id.*

These excerpts from the attached Form 302 make clear that many of Rasheed's statements do not mention his codefendants and yet are highly probative of Rasheed's knowing participation in the bid-rigging conspiracy with which he is charged. Rasheed's reference to unnamed other participants is not a *Bruton* violation simply because other admissible evidence suggests that the codefendants were among those other participants. *See, e.g.*, *Richardson*, 481 U.S. at 208 (approving a confession that did not incriminate codefendants on its face, except "when linked with evidence introduced later at trial"); *United States v. Logan*, 210 F.3d 820, 822 (8th Cir. 2000) ("the admissibility of a confession under *Bruton* is to be determined by viewing the redacted confession in isolation from the other evidence admitted at trial"). Similarly, a statement that merely suggests that multiple people were involved in the commission of the crime is permissible so long as it does not call particular attention to the defendant. *See Gray*, 523 U.S. at 196 (noting that the post redaction statement, "Me and a few other guys," would not be a violation of *Bruton*). "[O]nly those statements that clearly inculpate the defendant or are powerfully incriminating implicate the *Bruton* rule." *Yarbrough*, 852 F.2d at 1537 (citation omitted).

Because the government will introduce only Rasheed's statements that do not directly refer to his codefendants, a limiting instruction is sufficient to preserve the defendants' Sixth Amendment confrontation rights. *See Richardson*, 481 U.S. at 200-01, 207-08; *Yarbrough*, 852 F.2d at 1537. The "Confrontation Clause is not violated by the admission of a nontestifying codefendant's confession with a proper limiting instruction when, as here, the confession is redacted to eliminate not only the defendant's name, but any reference to his or her existence." *Richardson*, 481 U.S. at 208. And here, where there are numerous other members of the conspiracy in addition to Rasheed's codefendants, a

/ /

reference to other bidders or other participants even less "facially, expressly, clearly, or powerfully implicates the defendant[s]." *United States v. Angwin*, 271 F.3d 786 (9th Cir. 2001), *overruled on other grounds by United States v. Lopez*, 484 F.3d 1186 (9th Cir. 2007).

The Supreme Court has made clear that *Bruton* does not require courts to forego use of codefendant confessions altogether. *Richardson*, 481 U.S. at 210. Such a rule would be too high a price to pay "since confessions 'are more than merely desirable'; they are essential to society's compelling interest in finding, convicting and punishing those who violate the law.'" *Id*. (quoting *Moran v. Burbine*, 475 U.S. 412, 426 (1986). Here, just as in *Richardson*, it is possible to introduce defendant Rasheed's statement without reference to his codefendants' names or existence. Therefore, because the confession will not "expressly implicate[]" the other defendants, there is no *Bruton* issue and the Court should deny defendants' motions. *Richardson*, 481 U.S. at 208.

The government can carefully craft its questions to avoid any reference to the codefendants. The government will also ask the Court to instruct defendants to refrain from asking any question during cross-examination that could elicit such testimony. *See United States v. Tuyet Thi-Bach Nguyen*, 565 F.3d 668, 674 (9th Cir. 2009) (finding that the Confrontation Clause analysis does not change because a codefendant, as opposed to the prosecutor, elicits the hearsay statement). As a result, defendant Rasheed's statements will be introduced without reference to the defendants. Thus, there is no *Bruton* issue.

**II. DEFENDANTS JOHN BERRY AND REFUGIO DIAZ SHOULD NOT BE SEVERED FROM CODEFENDANT ALVIN FLORIDA BECAUSE THEY ARE PART OF THE SAME CONSPIRACY**

Defendants Berry and Diaz also argue that they should be severed because the "vast majority" of the evidence proffered by the government in its notice of coconspirator statements (Dkt. 194) allegedly does not implicate them, but rather, implicates codefendant Alvin Florida. In support of their arguments, defendants have incorporated the arguments and authority contained in their objection to the government's notice of coconspirator statements (Dkt. 227). It is not clear how defendants' incorporation of this twelve-page brief, which raises multiple issues, supports their argument for

/ /

severance. To the extent that defendants Berry and Diaz are arguing that they are prejudiced due to guilt by association or spillover of evidence implicating Alvin Florida that may not be admissible against them, this argument is without merit. Defendants Berry and Diaz are charged with codefendant Alvin Florida with participating in the same conspiracy to rig bids in Alameda County.[1] A defendant who knowingly joins a conspiracy is responsible for all of the actions of other members performed during the course and in furtherance of the conspiracy. *United States v. Bowman*, 215 F.3d 951, 968 (9th Cir. 2000). Hence, much of the evidence against one coconspirator is admissible against all the other members who knowingly joined the conspiracy.[2] In fact, the Ninth Circuit has "noted that a joint trial is particularly appropriate where the co-defendants are charged with conspiracy, because the concern for judicial efficiency is less likely to be outweighed by possible prejudice to the defendants when much of the same evidence would be admissible against each of them in separate trials." *United States v. Fernandez*, 388 F.3d 1199, 1242 (9th Cir. 2004), *modified*, 425 F.3d 1248 (9th Cir. 2005). Under *Fernandez*, a joint trial – not severance – is "particularly appropriate here" because all defendants are charged with participating in the same conspiracy.

### A. Defendants Bear the Burden of Showing That Joinder Is So Manifestly Prejudicial That It Outweighs Judicial Economy

Under Rule 14, the moving party bears the heavy burden of demonstrating the necessity of severance. *United States v. Arbelaez*, 719 F.2d 1453, 1460 (9th Cir. 1982). There is a preference in the federal system for joint trials of defendants who are indicted together. *See, e.g., United States v. Zafiro*, 506 U.S. 534, 536 (1993); *United States v. Stinson*, 647 F.3d 1196, 1205 (9th Cir. 2011). The preference for joint trials exists because "[j]oint trials generally serve the interests of justice by avoiding inconsistent verdicts and enabling more accurate assessment of relative culpability—advantages which sometimes operate to the defendant's benefit." *Richardson*, 481 U.S. at 210. The Court should set aside

/ /

---

[1] The Court granted the government's motion to dismiss Counts Two through Nine of the indictment. Dkt. 217.

[2] Defendants' Objections to the Government's Notice of Coconspirator Statements (Dkt. 227) argues that the government has improperly attempted to introduce evidence of multiple alleged conspiracies and, by implication, that evidence may be admissible to some defendants and not others.

the preference for joint trials only upon a defendant's showing that joinder is "so manifestly prejudicial that it outweighs the dominant concern of judicial economy and compels the exercise of the court's discretion to sever." *United States v. Brashier*, 548 F.2d 1315, 1323 (9th Cir.1976).

In determining the prejudicial effect of joint trials, the Court is guided by several factors, including:

> (1) whether the jury may reasonably be expected to collate and appraise the individual evidence against each defendant; (2) the judge's diligence in instructing the jury on the limited purposes for which certain evidence may be used; (3) whether the nature of the evidence and the legal concepts involved are within the competence of the ordinary juror; and (4) whether [defendants] could show, with some particularity, a risk that the joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence.

*Fernandez*, 388 F.3d at 1241. "The first two factors are weighed most heavily." *United States v. Ortiz*, No. 12-cr-119, 2013 WL 5597145 at *2 (N.D. Cal. Oct. 11, 2013) (quoting *Fernandez*, 388 F.3d at 1241).

### B. Berry and Diaz Fail to Show That Joinder Is Manifestly Prejudicial

Berry and Diaz do not mention the four-factor test and do not show that a single trial is so "manifestly prejudicial that it outweigh[s] the dominant concern with judicial economy and compel[s] the exercise of the court's discretion to sever." *Lopez*, 477 F.3d at 1116 (citation omitted). As the Ninth Circuit acknowledged in *Fernandez,* judicial economy is well served by a single trial of Berry and Diaz along with Alvin Florida and Rasheed because they all joined the same bid-rigging conspiracy in Alameda County. "Joint trials are particularly appropriate in conspiracy cases, where the government must introduce evidence of co-conspirators' acts simply to prove up the existence of a conspiracy." *Ortiz*, 2013 WL 5597145 at *2 (citing *Fernandez*, 388 F.3d at 1242).

An application of the four Rule 14 factors demonstrates that any prejudice to Berry and Diaz cannot outweigh the "dominant concern with judicial economy." *Lopez*, 477 F.3d at 1116 (citation omitted). First, Alvin Florida—the ringleader—played a role distinct from Berry and Diaz, who were employees at Florida's companies. Berry and Diaz have failed to identify with any specificity a single piece of evidence that is only admissible against Florida and not them. Even if there were some

/ /

evidence that can only be admitted against Florida and not to other codefendants, "[t]he fact that evidence may be admissible against only one of two defendants does not constitute such prejudice as to require separate trials." *United States v. Nace*, 561 F.2d 763, 769-70 (9th Cir. 1977). Second, it is well settled that limiting instructions typically suffice to reduce prejudice. "We have repeatedly held that a district court's careful and frequent limiting instructions to the jury, explaining how and against whom certain evidence may be considered, can reduce or eliminate any possibility of prejudice arising from a joint trial." *Fernandez,* 388 F.3d at 1243 (also noting that "the district court's explanatory and limiting instructions to the jury are more than sufficient to guard against the possibility of prejudice to the defendants"). Courts frequently use limiting instructions in multiple-defendant cases where some of the defendants' charges are distinct, and the Ninth Circuit's pattern jury instructions provide a model for doing so. *See* Ninth Circuit Model Jury Instructions 1.13, Separate Consideration for Each Defendant.

For example, in *Fernandez,* the Ninth Circuit upheld the district court's denial of a motion to sever a trial of eleven codefendants despite (unlike here) various and differing conspiracy charges against the defendants, including a separate drug-conspiracy charge as to some defendants and an additional murder-conspiracy charge as to one defendant. 388 F.3d at 1215, 1242-43; *see also United States v. Davis*, 663 F.2d 824, 833 (9th Cir. 1981) (severance not warranted for defendant charged in only one of two drug conspiracies where judge gave limiting instruction); *United States v. Burreson*, 643 F.2d 1344, 1347 (9th Cir. 1981) (limiting instruction sufficiently reduced prejudice in multiple-defendant case with varying securities and mail-fraud charges); *United States v. Lane*, No. 12-cr-1419, 2013 WL 3199836, at *2 (D. Ariz. June 24, 2013) (defendant was properly joined "in an indictment that includes a separate conspiracy involving his two co-conspirators," and denying severance based in part on a limiting instruction); *Ortiz*, 2013 WL 5597145 at *3 (limiting instruction would effectively prevent spillover in case where defendants faced varying charges).

Third, ordinary jurors can follow the Court's limiting instruction. The instruction would be the standard instruction given in joint trials to reach each verdict independently, an instruction followed by many juries in the cases cited above. The burden to show that jurors would be unable to follow the limiting instruction falls on defendants Berry and Diaz, and neither motion even attempts to meet this

/ /

burden. *United States v. Nelson*, 137 F.3d 1094, 1108 (9th Cir. 1998) ("[A] defendant seeking severance based on the 'spillover' effect of evidence admitted against a co-defendant must also demonstrate the insufficiency of limiting instructions given by the judge.") (alteration and quotation marks omitted). Jurors are presumed to follow a court's instructions. *See Richardson*, 481 U.S. at 206 (recognizing "the almost invariable assumption of the law that jurors follow their instructions"). There is no reason to believe jurors would not follow the standard instructions in this case.

Finally, a limiting instruction could ensure that the jury can make a reliable judgment about Berry's and Diaz's guilt or innocence. *See, e.g., United States v. Duran*, 189 F.3d 1071, 1082 (9th Cir. 1999) ("[A]ny prejudice that might arise from joinder is minimized by instructing the jury to consider the evidence separately as it relates to each defendant."). The parties have proposed limiting instructions from the Ninth Circuit Pattern Instructions, explaining to the jury that it must give separate consideration to each defendant and determine which evidence applies to each defendant, disregarding any evidence admitted solely against some other defendants. Jointly Proposed Jury Inst., Dkt. 244 at 13. Limiting instructions of this nature will strike the appropriate balance between eliminating prejudice and preserving the efficiencies and other benefits of a joint trial.

### III. DEFENDANTS' MOTIONS ARE UNTIMELY

In addition, defendants' motions are untimely. As defendants are aware, the Court ordered all pretrial motions to be filed by April 6, 2016. Dkt. 119. After that date, the only motions permitted were *motions in limine*. Defendants nonetheless filed these motions more than five months after the pretrial motions deadline. There is no excuse for this delay. Defendants have had the complete write-up of defendant Rasheed's interview since at least August 11, 2015. Sambat Decl. ¶ 4. Defendants cannot plausibly claim to have been unaware of a codefendant's confession for more than thirteen months that passed before they filed this motion. The Court should therefore deny defendants' motions as untimely.

/ /
/ /
/ /
/ /
/ /

## CONCLUSION

For the foregoing reasons, the government respectfully requests that the Court deny defendants' motions to sever.

DATED: September 28, 2016

Respectfully submitted,

_____/s/_____
ALBERT B. SAMBAT
MANISH KUMAR
SUSAN A. MUSSER
ASHLEY EICKHOF
Trial Attorneys
Antitrust Division
U.S. Department of Justice