1  EDWIN PRATHER, CABN 190536
   MAX MIZONO, CABN 286573
2  PRATHER LAW OFFICES
   461 Bush Street, Suite 350
3  San Francisco, CA 94108
   Telephone: (415) 881-7774
4  Email: edwin@pratherlawoffices.com
          max@pratherlawoffices.com
5
   Attorneys for Defendant
6  REFUGIO DIAZ
   On Behalf of All Defendants
7

8

9              UNITED STATES DISTRICT COURT

10            NORTHERN DISTRICT OF CALIFORNIA

11                  OAKLAND DIVISION

12

13  UNITED STATES OF AMERICA,          Case No.:  CR 14-0582 PJH

14          Plaintiff,                 **DEFENDANTS' JOINT RESPONSES TO THE
                                        UNITED STATES' MOTIONS IN LIMINE**
15      v.
                                        Pretrial Conference Date: October 12, 2016
16  ALVIN FLORIDA JR.,                  Time: 1:30 PM
    ROBERT ALHASHASH RASHEED,           Judge: The Honorable Phyllis J. Hamilton
17  JOHN LEE BERRY, III, and
    REFUGIO DIAZ.                       Trial Date: October 31, 2016
18
            Defendants.
19

20

21
          Defendants Alvin Florida, Jr., Robert Alhashash Rasheed, John Lee Berry, III, and Refugio Diaz
22
    hereby submit the following responses to the government's Motions in Limine.
23
    //
24
    //
25

## RESPONSE TO GOVERNMENT'S MOTION IN LIMINE NO. 1

The government's motion initially seeks to preclude defense evidence and argument that any alleged bid rigging was "justified." However, the government then expands beyond its own in limine request to also preclude any evidence or argument that bid rigging was "reasonable", as well as precluding evidence that the "victims" were negligent or acquiesced in the alleged conduct. The government's mishmash motion thus improperly attempts to bootstrap onto the Court's per se violation approach of the Sherman Act as the legal barricade to halt any defense whatsoever, and should therefore be denied.

Generally, the government's motion should be denied for vagueness. Indeed, the government never identifies what exact evidence its seeks to preclude. Rather, the government first requests preclusion of evidence showing "justification," but then moves onto precluding evidence showing "reasonableness," and finally "procompetitive" evidence from the alleged agreements to rig bids. Such a shotgun approach in the government's motion provides no real notice, opportunity, or due process to the defendants, and should be flatly denied as both over inclusive and vague.

Notwithstanding the above grounds for denial, the government has identified highly relevant evidence that goes directly to the elements of the offense it seeks to preclude from trial. While it is true the Court previously ruled that agreements to rig bids are per se unlawful under the Sherman Act, such a determination does not also automatically result in the government's claiming exemption from having to meet its burden of proof beyond a reasonable doubt for the remaining elements under the Sherman Act and the charge in the indictment. To this point, the defense filed its in limine motion seeking to introduce auction sale price analysis evidence and similar testimony. This evidence bears directly on the element of restraint on interstate commerce, and has nothing to do with the feared "reasonableness", "justification" or "pro-competiveness" of any alleged bid rigging.

Naturally, the government has an interest in characterizing this defense evidence as merely a way to "justify" any bid rigging. But, that evidence is directly relevant to the third element wherein the government must prove that the activities of the conspiracy ". . .suppress[ed] and restrain[ed] competition by rigging bids . . . in unreasonable restraint of interstate trade and commerce." *See* Indictment; paragraph 7. What the defense intends to show with such evidence is that the defendants' actions did not artificially suppress prices at the public auctions. Clearly, this evidence has nothing to do with the reasonableness or justification of any bid rigging.

Further, and going well beyond its own motion, the government seeks a blanket preclusion barring evidence that "victims" were negligent or should be blamed for any bid rigging. This request is nonsensical. First, the defense objects to the government's inflammatory description of trustees, criers, banks or beneficiaries as "victims." If the evidence shows auctioneers, trustees and beneficiaries participated in the auctions in some capacity and acquiesced in any bid rigging, they can hardly be described as "victims." The government can't have it both ways - "victims" do not "acquiesce".

Second, the evidence as it may relate to individual auctioneers, trustees and beneficiaries should be weighed on an individual by individual basis, and not by a single wide brush. For example, both the indictment and the government's motion states that the trustees oversaw the sale and auction of the properties. What the trustees or auctioneers actually did or saw in overseeing the public auctions has yet to be offered into evidence and may have relevance on any of the elements of the offense. Regardless of the government's limiting characterization, evidence of any of the four areas anticipated by the government – (1) auctioneers' awareness of the agreements to rig bids; (2) trustee company negligence in overseeing the auctions; (3) the banks not caring about maximizing their profits; or (4) banks' withholding competitive information – are all relevant to whether there were agreements to rig bids, as

well as the other elements of the offense.  In sum, and for the reasons above, this vague government motion should be denied.

## RESPONSE TO GOVERNMENT'S MOTION IN LIMINE NO. 2

In response to the government's motion, which seeks to admit evidence of the plea agreements of the cooperating witnesses at trial,[1] the defendants jointly move in limine under Fed. R. Evid. 403 to exclude any evidence of the plea agreements of any cooperating witness.  Defendants will not cross-examine the cooperating witnesses about their plea agreements and so any evidence of those agreements is irrelevant, and would be used by the government or considered by the jury only for an improper purpose.

Despite the government's desire to use the guilty pleas of others against the defendants, the government cannot dispute that the guilty pleas of the cooperating witnesses are "not evidence against" any of the defendants.  *See* Ninth Circuit Manual of Model Criminal Jury Instruction, Instruction 4.9 (2010) (the "guilty plea is not evidence against the defendant").  Indeed, it has been the state of the law in the Ninth Circuit for some time that a co-defendant's guilty plea "may not be offered by the government and received over objection as substantive evidence of the guilt of those on trial…" *United States v. Halbert*, 640 F.2d 1000, 1004, (9th Cir. 1981) (*per curiam*); *see also United States v. Smith*, 790 F.2d 780, 793 (9th Cir. 1986); *accord Baker v. United States*, 393 F.2d 604, 614 (9th Cir. 1968) *cert denied*, 393 U.S. 836 (1968).  *See also United States v. Garcia-Guizar*, 160 F.3d 511, 524 (9th Cir.

---

[1]	The government's motion references the cooperating witnesses' plea agreements.  But, the defendants understand that the cooperating witnesses testifying in this trial will enter new plea agreements with the government and plead guilty to the Count One – Bid-Rigging Conspiracy, sometime before trial commences on October 31, 2016.  As of the filing of this Motion, the defendants have not received any notice from the government as to the status of these new plea agreements, have not received copies of those plea agreements, have not been notified when those change of plea hearings will occur, etc.  Defendants assume that the government, via its Motion, intends to introduce the new plea agreements of the cooperating witnesses that contemplate guilty pleas as to Count One only.

1998), noting that admission of a co-defendant's guilty plea without an explanatory instruction (where the guilty plea is being received for credibility assessment only) is likely reversible error. Elsewhere, the Ninth Circuit has encouraged trial courts to provide adequate cautionary instructions that a guilty plea can be used only to assess credibility. *United States v. Rewald*, 889 F.2 836 (9th Cir. 1989).

The only purpose for which a guilty plea may be considered is as impeachment of the witness's credibility. The defense may often, therefore, cross-examine a cooperating witness about the terms of his or her plea bargain to show that the witness has an incentive to inculpate the defendant, or to testify in a particular way to curry favor with the government. In anticipation of defense cross-examination, the government often seeks to elicit the fact and terms of the plea agreement during its direct examination, and courts usually allow it to "blunt defense efforts at impeachment" by allowing the government to put in evidence of the plea agreements during its direct examinations. *See Halbert* at 1004; Fed. R. Evid. 607 (parties may impeach their own witnesses). The government may also submit, on redirect, the provisions of the plea agreement that require the witness to tell the truth. Aside from the impeachment value of a witness's plea agreement, the plea agreement is irrelevant and, as discussed below, highly prejudicial to the defense.

In this case, the defense will stipulate that it will not attack the credibility of any witness on the ground that their plea agreement gives them an incentive to incriminate the defendants or a bias in favor of the government. Any evidence of the plea agreements will thus have little or no relevant probative value. Such evidence will, however, have a tremendous potential for creating undue prejudice for the defendants given the charges and the defense in this case, and the position the government has already taken in this case. Because the government has charged a bid-rigging conspiracy, its theory is, at least in part, that these defendants are guilty because other cooperating defendants – now witnesses – admitted

guilt in their plea agreements. The defendants, on the other hand, will argue that they are innocent and that their conduct did not constitute a crime.

This is not a case in which the government witnesses will have to be impeached with their plea bargains. For example, compare a case in which a government witness was in jail for theft with a defendant charged with murder and the witness testifies that the defendant confessed his guilt to the murder. The witness enters a plea agreement with the government in which he is given leniency for his separate theft crime in exchange for his testimony against the defendant in the murder case. In that case, the witness's plea could not possibly be construed by the jury as evidence of the defendant's guilt of the murder, and so introduction of the agreement by the defense to impeach the witness's credibility is necessary.

Here, however, there is a very serious risk that the jury will consider the witnesses' plea agreements as evidence of the defendants' guilt, and that the government will in fact use the pleas for that purpose, as it has already. The jury may well conclude that if the witness has admitted guilt for conduct similar, or even identical to the defendants, then the defendants too must be guilty. The government has argued just that in its Notice of Coconspirator Statements (Dkt. 194), and in its rebuttal in a previous auction fraud case tried in Sacramento. *See United States v. Katakis*, No. CR S-11-511 WSB (E.D. Cal. 2014), Transcript, Vol. 18, at 3466, 3468-69 (government arguing that it would not say that its witnesses "aren't criminals, because they are" and "some of them pleaded guilty" and took "responsibility" for their illegal conduct). Under the circumstances, the serious risk of undue prejudice to the defendants outweighs any possible probative value of the plea agreements.

In this case, where the defense agrees not to cross-examine the witnesses about their plea agreements, and where the witnesses are admitting guilt based on the same conduct for which the defendants are on trial, the risk of prejudice to the defendants so far outweighs the practically

nonexistent probative value of the pleas that the usual limiting instruction is not sufficient to eliminate the harm. *See United States v. Nosal*, No. CR 08-00237-EMC (N.D. Cal. 2013), Dkt. 352 (granting defendant's motion in limine to exclude plea agreements because "[t]he risk of unfair prejudice substantially outweigh[s] the little, if any, probative value of the pleas). In *Nosal*, the facts were substantively identical – the cooperating witnesses stated in their pleas that their conduct – the same conduct as the defendant's – was criminal. The defendant argued that such conduct was not illegal under the applicable statute, and defendant agreed not to cross-examine the witnesses about their pleas. For those reasons, as Judge Chen held, the plea agreements were excluded under Fed. R. Evid. 403.

For the foregoing reasons, and based on Fed. R. Evid. 403, any evidence of a witness's plea agreement should be excluded from the government's case-in-chief.

### RESPONSE TO GOVERNMENT'S MOTION IN LIMINE NO. 3

The defendants do not anticipate cross-examining the cooperating witnesses about their prior convictions. Should the defendants cross-examine the cooperating defendants regarding their prior convictions, however, the defendants will only do so for proper purposes pursuant to the Federal Rules of Evidence.

### RESPONSE TO GOVERNMENT'S MOTION IN LIMINE NO. 4

The defendants do not object to the government's motion at this time, but reserve the right to object at a later time, depending on how this evidence comes in at trial.

### RESPONSE TO GOVERNMENT'S MOTION IN LIMINE NO. 5

The defendants do not object to the government's motion at this time, but reserve the right to object at a later time, depending on how this evidence comes in at trial.

//

//

//

//

Dated: September 28, 2016                          Respectfully submitted,


                                                   _____/s/_____
                                                   EDWIN PRATHER
                                                   MAX MIZONO
                                                   PRATHER LAW OFFICES
                                                   Attorneys for Defendant Refugio Diaz
                                                   ON BEHALF OF ALL DEFENDANTS