MANISH KUMAR (CSBN 269493)
ALBERT B. SAMBAT (CSBN 236472)
SUSAN A. MUSSER (MOBN 63116)
ASHLEY EICKHOF (CSBN 307143)
U.S. Department of Justice
Antitrust Division
450 Golden Gate Avenue
Box 36046, Room 10-0101
San Francisco, CA 94102
ashley.eickhof@usdoj.gov
Telephone: (415) 934-5300

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ALVIN FLORIDA, JR.,<br>ROBERT ALHASHASH RASHEED,<br>JOHN LEE BERRY, III,<br>REFUGIO DIAZ, and<br>STEPHAN ALEXANDER FLORIDA,<br><br>Defendants. | CASE NO. CR 4:14-00582 PJH<br><br>**UNITED STATES' OPPOSITION TO DEFENDANTS' JOINT PROPOSED JURY INSTRUCTIONS**<br><br>Pretrial Conference: October 12, 2016<br>Court: Hon. Chief Judge Phyllis J. Hamilton<br>Trial Date: October 31, 2016 |

In response to the Court's pretrial order (dkt. 223), the United States respectfully submits the following objections to the defendants' joint proposed jury instructions.

## ARGUMENT

### I. The Court Should Not Give Defendants' Jury Instruction No. 1 Regarding Expert Testimony

Defendants' first proposed jury instruction relates to expert testimony. Their first motion *in limine* seeks to admit what is presumably expert testimony regarding an analysis of auction sale prices. Defendants' Joint Motions in Limine, dkt. 236, at 2. Defendants, however, have not yet noticed an expert witness under Federal Rule of Evidence 702. The government objects to such testimony for the reasons stated in its opposition to defendants' motion *in limine*. Such testimony is irrelevant under the *per se* standard that this Court has ruled applies to this case. It also would lack an evidentiary basis for admission, be unreliable, and risk compromising the jury's verdict with prejudicial and irrelevant evidence. Because the government objects to such testimony, the government requests that this instruction not be given.

### II. Defendants' Jury Instruction No. 2 Is Unnecessary Because the Parties Have Jointly Proposed Equivalent Instructions

Defendants' second proposed instruction contains a preamble generally describing the posture of the case, to which the government does not object. The substantive portion of the instruction—which the government does object to—is as follows:

**Separate Crime, Separate Consideration**

> A separate crime is charged in Count One against each named defendant. You must reach a separate unanimous decision on the elements of Count One against each named defendant.
>
> Although the defendants are being tried together, you must give separate consideration to each defendant. In doing so, you must determine which evidence in the case applies to each defendant, disregarding any evidence admitted solely against some other defendant. The fact that you may find one of the defendants guilty or not guilty should not control your verdict as to any other defendant.
>
> You are only to determine whether each defendant is guilty or not guilty of the charge against him in the Indictment. Your determination must be made only from the evidence in the case. The defendants are not on trial for any conduct or offenses not charged in the Indictment. You should consider evidence about the acts, statements, and intentions of others, or evidence about other acts of a defendant, only as they relate to the charge against each defendant.

The unanimity requirement in the first paragraph is reflected in several of the Court's standard jury instructions, all of which the parties have jointly proposed. For example, the 2010 Ninth Circuit Model Criminal Jury Instruction 7.1 ("Model") states, "Your verdict, whether guilty or not guilty, must be unanimous." The verdict form instruction (Model Instruction 7.5, Joint Instruction 36) similarly refers to "unanimous agreement on a verdict." Thus, the proposed language is unnecessary because it will be reflected in other instructions that the Court will give to the jury.

With regard to the second paragraph proposed above, the parties have jointly proposed an equivalent instruction, Model Instruction 2.7:

### JOINT INSTRUCTION NO. 12
### SEPARATE CONSIDERATION FOR EACH DEFENDANT

> Although the defendants are being tried together, you must give separate consideration to each defendant. In doing so, you must determine which evidence in the case applies to each defendant, disregarding any evidence admitted solely against some other defendants. The fact that you may find one of the defendants guilty or not guilty should not control your verdict as to any other defendants.

Dkt. 244 at 16. Similarly, the parties have jointly proposed an equivalent instruction to the third paragraph above, Model Instruction 3.10:

### JOINT INSTRUCTION NO. 26
### ACTIVITIES NOT CHARGED

> You are here only to determine whether the defendants are guilty or not guilty of the charges in the indictment. The defendants are not on trial for any conduct or offense not charged in the indictment.

Dkt. 244 at 30. The language proposed by defendants is an unnecessary departure from the Model Instructions. Moreover, repetitive instructions regarding basic aspects of the trial risk juror confusion. Defendants' requested instruction should not be given.

**III. The Defendants' General Conspiracy Instruction Improperly Deviates from the Model and Erroneously Includes an Overt Act Requirement**

Defendants base their general conspiracy instruction on Model 8.20, but with two important deviations to which the government objects. First, defendants materially changed the first element of a conspiracy. Their proposed instructions reads, in relevant part, "First . . . *the defendant made an agreement* with one or more persons to suppress and restrain competition by rigging bids to obtain hundreds of selected properties offered in public auction in Alameda County in reasonable [sic] restraint

of trade and commerce as charged in the indictment." Defendants' Joint Proposed Jury Instructions, dkt. 240 at 4 (emphasis added). This is an incorrect statement of the law. The equivalent, unmodified language in Model Instruction 8.20 reads as follows: "First, beginning on or about [date], and ending on or about [date], there was an *agreement between two or more persons* to commit at least one crime as charged in the indictment." Ninth Cir. Model Instruction 8.20 (2010) (emphasis added). Defendants' instruction would mislead the jury into thinking that each defendant must have directly participated in the formation of the conspiracy, when all that is legally required is that a defendant knowingly joined the charged conspiracy. *See United States v. Perry*, 550 F.2d 524, 529 (9th Cir. 1977) ("Once a conspiracy has been found to exist, only slight evidence is necessary to connect a defendant to it. . . . The government does not have to prove that all of the defendants met together at the same time and ratified illegal scheme."). Defendants' formulation of this element also contains an awkward recitation of the object of the conspiracy, where the Model more concisely references the "crime as charged in the indictment." This language also suggests that the reasonableness of the restraint on trade and commerce is an issue, which it is not because this is a *per se* bid-rigging case. Should the Court be inclined to give Model Instruction 8.20, the government requests that the Court instruct the jury on this element based on the original language contained in the Model.

Second, defendants' proposed instruction erroneously contains an overt act requirement. The commentary to Model 8.20 reads, "Use the third element in this instruction only if the applicable statute requires proof of an overt act." The Sherman Act, 15 U.S.C. § 1, has no overt act requirement. *United States v. Miller*, 771 F.2d 1219, 1226 (9th Cir. 1985) ("An indictment charging a violation of section one of the Sherman Act is not required to allege any overt act . . . . Because the Sherman Act punishes the mere act of conspiring, overt acts in furtherance of the conspiracy need not be alleged."). Accordingly, this element and the last paragraph of the proposed instruction concerning the legality of an overt act should be stricken.

Following the elements of a criminal conspiracy, Model Instruction 8.20 contains a general legal description of a conspiracy. Defendants' proposed instruction unnecessarily alters this general description. First, this portion of defendants' instruction begins, "I will now explain to you the elements of a conspiracy." This preamble does not appear anywhere in the model and furthermore is incorrect

because the elements of a conspiracy have just been described. Defendants' version of the instruction also deletes the following italicized clause from the first sentence of the paragraph: "One becomes a member of a conspiracy by willfully participating in the unlawful plan with the intent to advance or further some object or purpose of the conspiracy, *even though the person does not have full knowledge of all the details of the conspiracy*." Model Instruction 8.20. There is no legal justification for omitting this language. The government objects to this deletion.

The government does not oppose defendants' request for a general instruction regarding the elements a criminal conspiracy, but requests that the Court instruct the jury using the original, unmodified language of the Model instruction without the overt act paragraphs.

### IV. A Multiple Conspiracies Instruction Should Not Be Given

The government opposes a jury instruction on multiple conspiracies. The defendants' theory of multiple conspiracies, at least as articulated in their objections to the government's coconspirator statements notice, appears to be that each bid-rigged property must constitute a separate conspiracy because different individuals participated in each auction and because each foreclosure sale is a discrete financial transaction. *See* Defendants' Objections to the Government's Notice of Co-Conspirator Statements ("Objections"), dkt. 227 at 13-14 ("In reality, each time the 'conspirators' bid at public auction, that action constituted a different conspiracy."). But this theory of multiple conspiracies is unsupported by the law and will have no foundation in the evidence at trial. It is of no moment that the conspiracy involved separate bid-rigging agreements at various auctions. "[A] single conspiracy may involve several subagreements of competitors." *United States v. Tille,* 729 F.2d 615, 621 (9th Cir. 1984). *See generally United States v. Eubanks*, 591 F.2d 513, 518 (9th Cir. 1979) (quoting *Perry*, 550 F.2d at 533 ("the jury could find that there were several different agreements involving the defendants, all of which would then connect the defendants to the general overall conspiracy as charged in the indictment")). Thus, the fact that conspirators agreed in various instances to refrain from bidding during a proper auction cannot serve as a basis for a multiple conspiracies instruction.

Defendants also assert that "[e]ach alleged conspiracy started and 'terminated' when the property was sold to whichever individuals participated in the public auction at that particular and time." Objections, dkt. 227 at 15. But the evidence at trial will demonstrate that the rigged bids at the auctions

were not a series of disconnected transactions.  In the Ninth Circuit, courts look at several factors to determine whether there was a single conspiracy, including "the nature of the scheme; the identity of the participants; the quality, frequency, and duration of each conspirator's transactions; and the commonality of time and goals." *United States v. Bibbero*, 749 F.2d 581, 587 (9th Cir. 1984). "Typically, the inference of an overall agreement is drawn from proof of a single objective . . . or from proof that the key participants and the method of operation remained constant throughout the conspiracy." *United States v. Fernandez*, 388 F.3d 1199, 1226 (9th Cir. 2004), *modified*, 425 F.3d 1248 (9th Cir. 2005).

Here, while the exact participants in any single rigged auction could vary, defendants participated in a series of bid-rigging acts in Alameda County beginning in 2008 and continuing through 2011.  At trial, the evidence will show that a regular group of bidders—repeat players at the auctions—took part in the bid rigging, admitted to engaging in bid rigging during the same time period as defendants and at the very same location as defendants on a regular basis, and have implicated defendants.  The fact that each property was generally rigged separately does not alter the analysis. "The general test also comprehends the existence of subgroups or subagreements." *United States v. Arbelaez,* 719 F.2d 1453, 1457-58 (9th Cir. 1983).  Indeed, in price-fixing and bid-rigging cases, it is not uncommon for the coconspirators to reach discrete agreements (concerning, for example, different products, pricing changes, or bids) as part of the scheme.  Here, the method of operation of the conspiracy remained constant:  While there were some straight payoff agreements (typically, where there were only two coconspirators involved), for the most part, defendants and their coconspirators held "rounds"—secondary private auctions—hundreds of times.  The conspirators certainly did not come up with the elaborate practices surrounding rounds (such as different bidders "insuring" each other) anew each time they agreed to rig a particular auction.  These practices were already established by the conspiracy members.  Additionally, members of the conspiracy kept ledgers to track how much money they owed each other over time and then met with the defendants to reconcile accounts—another fact showing that this was not a series of disconnected transactions.  And, the conspirators had the same financial objective in participating in the bid-rigging conspiracy—purchasing the properties at noncompetitive prices and receiving payoffs at the rounds.

1 | In support of their multiple conspiracies theory, defendants also argue that "the evidence will show that the defendants, as well as their purported coconspirators, acted at variance and antagonistically to one another at the public auctions." Objections at 15. But even assuming such evidence exists, that would not a warrant a multiple conspiracies instruction. The fact that defendants and coconspirators at times competed against each other is legally irrelevant. Because bid rigging is a *per se* violation under the Sherman Act, there is no requirement that a criminal bid-rigging conspiracy eliminate all competition. Indeed, this very principle is reflected in defendants' own proposed jury instructions. *See* Defense Instructions, dkt. 240 at 8 ("It is not a defense that the conspirators actually competed with each other in some manner or that they did not conspire to eliminate all competition."); *see also* 2009 American Bar Association Section of Antitrust Law's *Model Jury Instructions in Criminal Antitrust* Cases ("ABA Model"), Chapter 3(G) (Bid Rigging) at 61.

If the Court finds that a multiple conspiracies instruction is warranted, the government objects to defendants' formulation, which adds "or conspiracies" at various locations throughout Model Instruction 8.22. This language is cumbersome and risks juror confusion. The government therefore requests that "or conspiracies" language be stricken. The government does not oppose the addition of the word "unanimously" to the first sentence of this instruction to satisfy the specific unanimity requirement. *See* Commentary, Model Instruction 7.9, Specific Issue Unanimity ("When the evidence establishes multiple conspiracies, failure to give a specific unanimity instruction may be plain error and the court may have a duty to *sua sponte* give the instruction requiring the jurors to unanimously agree on which conspiracy the defendant participated in." (citing *United States v. Lapier*, 796 F.3d 1090 (9th Cir. 2015)).

**V.  Defendants' Proposed Instruction No. 5 Regarding Bid Rigging Should Not Be Given, and the Court Should Give the ABA Model Instruction Instead**

Defendants' fifth proposed instruction is an edited version of an instruction given in *United States v. Katakis*, No. CR S-11-511 WBS (E.D. Cal. 2014).[1] *Katakis* was a factually distinct bid-rigging prosecution that involved evidence and defenses that may or may not be introduced in this trial. The government proposes that the Court use the ABA Model Instruction on bid rigging, parts of which are

//

---

[1] For the Court's reference, the original *Katakis* instructions are attached as Exhibit A and relevant excerpts from the ABA Model Instructions as Exhibit B.

reflected in the *Katakis* instruction. The ABA Model Instructions generally are the most current, generally accepted, neutral criminal antitrust instructions available. As such, they serve as a sound basis for antitrust-specific instructions like bid rigging.

Defendants' modifications to the ABA Model Instruction are superfluous, confusing, and misleading. The grand jury charged defendants with violating the Sherman Act by entering into agreements not to compete with competitors at the auction. The grand jury did not charge defendants with restraining competition by entering into a joint venture. If defendants show that the charged conduct – agreements not to compete with horizontal competitors and subsequent rounds – are legitimate joint ventures, then the government has not proven the alleged conspiracy because the defendants were not horizontal competitors. Thus, the proposed instructions on bid-rigging are sufficient alone. Defendants' additional proposed instruction is unnecessary and misleading, and the ABA Model Instruction should be given instead.

**VI. Defendants' Proposed Instruction No. 6 Regarding Resales Need Not Be Given**

Defendants' proposed jury instruction is misleading. The instruction explains that a winning bidder does not violate the Sherman Act by purchasing a property at a foreclosure sale and reselling either the property or the right to purchase the property. This is not correct in every instance. If a defendant first enters into an agreement not to bid and then participates in a second auction to "sell" the right to purchase the property, the defendant has violated the Sherman Act. By suggesting that the jury separately analyze the conduct of the defendants after the public auction without considering whether it was contingent on an agreement not to bid, this instruction misleads the jury. The government objects to its inclusion in the jury instructions.

**VII. The Defendants' Instruction No. 7 Regarding "Knowingly" Is Missing Several Elements**

Defendants' instruction deviates from the ABA Model Instruction by deleting several unbracketed portions, presumably because they are not helpful to the defense case. The government has proposed an unmodified version of the Ninth Circuit instruction instead. The term "knowingly" is not a term specific to antitrust law, and given the direct authority from the Ninth Circuit, the government requests that the jury be given the Model Instruction instead.

//

## VIII. Response to Defendants' Instruction No. 8 Regarding Interstate Commerce

Defendants' proposed jury instruction[2] tracks the ABA Model. The Ninth Circuit, however, has provided additional guidance on proper jury instructions on interstate commerce in bid-rigging cases of real estate. The government's proposed jury instructions incorporate this additional guidance that further refines the ABA Model Instructions.

The United States' Instruction No. 10 provides that:

> To decide whether the charged conspiracy was "in the flow" of interstate commerce, you must determine whether the activities of the charged conspiracy were an essential part of a real estate transaction across state lines. While real estate remains physically in one state, money from real estate transactions can be in the flow of interstate commerce. Funds in interstate commerce are considered in commerce until they reach the point where their movement is intended to end. A temporary pause in their transit does not necessarily mean that the funds are no longer in commerce – where there is a practical continuity of movement, funds remain in commerce until they reach their final destination. If you find that the rigged foreclosure sales at the Alameda County real estate auctions were an essential part of interstate foreclosure transactions involving the transfer of funds from the State of California to entities in other states, then the conspiracy is in the flow of interstate commerce and therefore the interstate commerce element is proven for the bid-rigging count. If the charged conspiracy occurs within the flow of interstate commerce, whether the conspiracy affected that commerce is irrelevant. The amount of funds transferred is also irrelevant.

This instruction is based primarily on the jury instructions given in *United States v. Guthrie*. 814 F. Supp. 942, 947 (E.D. Wash. 1993) (applying *McLain v. Real Estate Bd., Inc.*, 444 U.S. 232 (1980) and *Goldfarb v. Virginia State Bar*, 421 U.S. 773 (1975) when instructing the jury on interstate commerce). The allegations in *Guthrie* were that the defendant "attended and participated in the public non-judicial foreclosure sales of real property located in Spokane, Washington, and "entered into agreements with the other potential bidders that, in return for his payments to them, they would not bid on the properties and he alone would bid." *Id.* at 943-44. There the court instructed the jury, in part, on interstate commerce as follows: "Funds in interstate commerce are considered in commerce until they reach the point where their movement is intended to end. . . . While real estate remains physically in one state, transactions related to real estate can be in the flow of interest commerce. To decide whether the

//

---

[2] Defendants' version of the instruction refers to interstate commerce as the "fourth" requirement rather than the third, as described in the model, perhaps because they seek to include an overt act requirement in the definition of a conspiracy. *See supra* at 4.

alleged conspiracy was 'in the flow' of interstate commerce, you must determine whether the activities restrained an essential part of a real estate transaction across state lines. When the alleged conspiracy occurs within the flow of interstate commerce, the magnitude of the commerce restrained is unimportant." *Id.* at 948. In denying defendant's motion for acquittal, the court held that the jury found that the "rigged sales were an essential part of those specific transactions" and that the funds from those rigged sales moved "across state lines to the out of state banks." *Id.* at 945-46.

The government's proposed instruction concerning the "flow" theory of interstate commerce mirrors the instructions used in *Guthrie*. These instructions refine the ABA Model Instructions by providing a roadmap explaining to the jury what facts the government must prove to meet its burden to show that the rigged sales at the foreclosure auctions were in the flow of interstate commerce. The government requests the Court to use its proposed jury instruction to provide additional guidance to the jury on what it must find for the government to prove the interstate commerce element of the charged Sherman Act offense.

## IX.     Response to Rule-of-Reason Instructions

Defendants have proposed jury instructions 9 through 12 instructing the jury to apply the rule-of-reason standard to this case in direct violation of this Court's pretrial order. The Court has already held that this case is a *per se* case and denied defendants' motion to adjudicate under the rule-of-reason standard. Pretrial Order, dkt. 186, at 1, ¶ 3. The government, therefore, requests that the jury not be instructed to apply the rule-of-reason standard to this case and instead be instructed to apply the *per se* standard in accordance with this Court's previous order and over one hundred years of precedent. *See e.g., United States v. Trenton Potteries*, 273 U.S. 392 (1927).

/ /

/ /

/ /

/ /

/ /

/ /

/ /

# CONCLUSION

The government respectfully requests that the Court provide the jury with the government's proposed jury instructions.

Respectfully submitted,

/s/
Manish Kumar
Susan A. Musser
Albert B. Sambat
Ashley Eickhof
Trial Attorneys
Antitrust Division
U.S. Department of Justice