MANISH KUMAR (CSBN 269493)
ALEXIS LOEB (CSBN 269895)
U.S. Department of Justice
Antitrust Division
450 Golden Gate Avenue
Box 36046, Room 10-0101
San Francisco, CA 94102
manish.kumar@usdoj.gov
Telephone: (415) 934-5300

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ALVIN FLORIDA, JR.,<br>ROBERT ALHASHASH RASHEED,<br>JOHN LEE BERRY, III, and<br>REFUGIO DIAZ,<br><br>Defendants. | CASE NO. CR 14-00582 PJH<br><br>**UNITED STATES' MOTION FOR MISCELLANEOUS RELIEF REGARDING TESTIMONY OF UNDERCOVER AGENT**<br><br>Court:  Hon. Chief Judge Phyllis J. Hamilton<br>Trial Date:  October 31, 2016 |

In the course of trial preparation, the United States recently identified certain security concerns relating to the testimony of UCE-3322, an undercover agent previously noticed on the government's witness list.  The government hereby asks this Court to take certain protective security measures described below in order to help protect the true identity and physical image of one undercover agent who is scheduled to testify in this case.  The identity of the UCE has not been provided in discovery, and the government has an ongoing law enforcement interest in protecting the agent's identity from disclosure.   The specific need to protect the identity of UCE-3322 is described in an under seal, *ex parte* declaration that the government has submitted concurrently with this motion.

/ /

Specifically, the government requests that the Court adopt the following procedures:

- When UCE-3322 testifies, permit only the Court, court personnel, the jury, the defendants, their counsel and trial team, and the government's trial team to be present in the courtroom;

- Allow the public to listen to the proceedings from a separate courtroom using a simultaneous audio feed, such as through the Court's teleconference system or by a speakerphone placed on the witness stand;

- Authorize UCE-3322 to use the agent's undercover name when testifying;

- Include only UCE-3322's undercover name in the jury questionnaire, but show his picture to the venire to determine any potential conflicts;

- Prohibit the defense from asking any questions seeking the UCE's personal identifying information; and

- Allow the government to redact the facial image of the UCE on any video or photograph exhibits retained by the Court for public filing (although unredacted videos and photos will be offered at trial and played for the jury).

Finally, the government will arrange with the U.S. Marshals' office and/or the Court Security Officers for special procedures for the UCE to enter and exit the courtroom without being photographed or recorded.

Other courts in this district have recently undertaken measures to protect undercover agents testifying at trial. In *United States v. Kwok Cheung Chow*, No. 14-cr-196 (N.D. Cal. Jun. 24, 2015), Judge Breyer permitted the undercover agent to testify using a pseudonym and did not allow the public in the courtroom during the undercover agent's testimony, making the testimony available via video feed (that did not show the undercover officer) in a different room. Decl. of Manish Kumar In Supp. of Gov't Mot. for Miscellaneous Relief ("Kumar Decl.") ¶ 26 (filed *ex parte* and under seal). In *United States v. John McGaha*, Judge Alsup proposed measures including prohibiting devices capable of taking photographs and sketch materials from the courtroom and permitting the undercover agent to testify under a pseudonym (although swearing the agent in, outside the presence of the jury, under the agent's

//

1  true name).  *See* Final Pretrial Order, *United States v. McGaha*, No. 15-cr-126, Dkt. 406 (N.D. Cal. Apr. 27, 2016), Kumar Decl. Ex. C.

Similarly, in *United States v. Mohamud*, 941 F. Supp. 2d 1303 (D. Or. 2013), the district court allowed two undercover agents to testify without disclosing their true identities, despite the defense's objection that it did not have a fair opportunity to cross-examine the undercover agents without being able to fully investigate their backgrounds.  *Id.* at 1317.  As here, the government submitted *ex parte* materials providing reasons for keeping the undercover agents' identities secret from the defense and disclosed any *Giglio* information regarding the agents (there was none), as well as recordings of their interactions with the defendant.  *Id.*  The government also provided information about the agents' background, training, and experience, as the government proposes to do in this case.  *Id.*

It should also be noted that the United States is *not* seeking to take the drastic step of closing the courtroom for the duration of the trial or preventing the public from observing these proceedings in general, as the government has requested in other trials involving undercover agents.  *See Gonzalez v. Quinones*, 211 F.3d 735, 738 (2d Cir. 2000) ("courts may properly order courtrooms closed during the testimony of undercover police officers, in order to protect both the officers' safety and their future effectiveness").  To the contrary, the government seeks to take reasonable, limited measures solely to protect the safety and security of its UCE, who may continue to be engaged in undercover activities in other, unrelated cases.

The Confrontation Clause of the Sixth Amendment provides that the defendant in a criminal trial has the right to confront and cross-examine the government's witnesses who testify against the defendant.  *Maryland v. Craig*, 497 U.S. 836, 846 (1990); *Smith v. Illinois*, 390 U.S. 129 (1968).  The "elements of confrontation – physical presence, oath, cross-examination, and observation of demeanor by the trier of fact – serves the purposes of the Confrontation Clause by ensuring that evidence admitted against an accused is reliable and subject to rigorous adversarial testing that is the norm of Anglo-American criminal proceedings." *Craig*, 497 U.S. at 846.  "The rule is that once cross-examination reveals sufficient information to appraise the witnesses' veracity, confrontation demands are satisfied." *United States v. Falsia*, 724 F.2d 1339, 1343 (9th Cir. 1983).

//

"[T]rial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986).  "[T]he Confrontation Clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Id.*

Several circuits, including the Ninth Circuit, have concluded that witnesses' use of a pseudonym is appropriate, finding that the government's interests in protecting the witness from harm outweighs the defendants' interests in learning the true name of the witness.  *See United States v. Rangel*, 534 F.2d 147 (9th Cir. 1976) (permitting testimony by informant without disclosing his true name); *United States v. Ellis*, 468 F.2d 638 (9th Cir. 1972) (restricting cross-examination of witnesses for their protection); *United States v. Ramos-Cruz*, 667 F.3d 487 (4th Cir. 2012) (allowing two government witnesses to testify under pseudonyms and without revealing their names, home and work addresses, or dates and places of birth); *Brown v. Kuhlman*, 142 F.3d 529, 532 n.3 (2d Cir. 1998) (testifying undercover detective permitted to testify using his badge number instead of his true name); *Siegfriedt v. Fair*, 982 F.2d 14, 18 (1st Cir. 1992); *United States v. Palermo*, 410 F.2d 468, 472 (7th Cir. 1969).

In *Ellis*, the Ninth Circuit suggested ground rules for testimony being provided without disclosure of a witness's name, address and/or place of employment.  *Id.* at 639.  *Ellis* involved an undercover agent who had purchased marijuana from the defendant.  *Id.*  During cross-examination of the agent, the trial court restricted the defendant's "effort to break the agent's 'cover.'"  *Id.*  The Ninth Circuit upheld the trial court's decision and adopted procedures suggested in *Palermo*.  *Palermo*, 410 F.2d at 472.  In *Palermo,* the Seventh Circuit upheld the decision to withhold information about witnesses' addresses and place(s) of employment.  *Id.* at 472-73.  It held that "where there is a threat to the life of the witness, the right of the defendant to have the witness' true name, address and place of employment is not absolute." *Id.*  Thus, the Ninth Circuit recognizes a trial court may properly withhold true names under certain circumstances, which are present in this case and are explained more fully in the *ex parte* declaration.

/ /

Nor does the government need to provide the agent's true name to fulfill its obligations under *Brady v. Maryland*, 373 U.S. 83, 87 (1963), or *Giglio v. United States*, 405 U.S. 150, 154 (1972). The actual name of the UCE is not in and of itself exculpatory. Nor is the name itself *Giglio* information, meaning impeaching information.

The Supreme Court has recognized that a list of witnesses' names is not *Brady* information. *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977). In *Weatherford*, the prosecution decided on the morning of trial to call Weatherford, an undercover agent, against Bursey. Bursey did not previously know that Weatherford was an undercover agent and had included Weatherford in trial preparation meetings with Bursey and his attorney. The Supreme Court rejected Bursey's argument that there was a *Brady* violation because he was unable to do a background check on Weatherford for purposes of cross-examination. *Id.* It stated that it "does not follow from the prohibition against concealing evidence favorable to the accused that the prosecution must reveal before trial the names of all witnesses who will testify unfavorably." *Id.*

Moreover, here – and unlike in *Weatherford* – the defense has been aware of the undercover agent's role in the investigation for over a year, and the government has and will continue to provide the defense with all *Brady* and *Giglio* materials concerning the agent. The government has previously searched the agent's personnel file and found no *Henthorn* material to produce. Kumar Decl. ¶ 25. His only post-educational employment has been with the FBI. *Id.* The undercover agent has no social media accounts for the defense to investigate. *Id.* There has never been an adverse credibility finding by a court against the undercover agent. *Id.* The undercover agent does not have a criminal record. *Id.* There are no pending complaints, investigations, or disciplinary actions against the agent. *Id.* The agent's employment in law enforcement has never been terminated while an investigation of him was pending, nor has the agent resigned from a law enforcement job while an investigation of him was pending. *Id.* The agent has no close personal relationships with the defendants, prosecutors, witnesses, or defense counsel in this case. *Id.*

Thus, not only is the agent's name not *Brady* or *Giglio* information, but it is also extremely unlikely to even lead to any such information. The defense's wish to conduct a fishing expedition – at cost to the agent's safety – is far removed from the government's obligation to provide *material*

U.S. MOT. FOR MISC. RELIEF
No. CR 14-00582 PJH                                                5

exculpatory evidence under *Brady*.  The defense's overbroad reading of the government's discovery obligations in their addendum to their pretrial conference statement (Dkt. 273) would mean that nearly every piece of information in the government's possession is discoverable because it could be a potential avenue of defense investigation that could potentially lead to exculpatory or impeachment material. This cannot be the case.  *See Weatherford*, 429 U.S. at 559 ("[t]here is no general constitutional right to discovery in a criminal case, and *Brady* did not create one"); *United States v. Gardner*, 611 F.2d 770, 774-75 (9th Cir. 1980) ("[T]he prosecution does not have a constitutional duty to disclose every bit of information that might affect the jury's decision; it need only disclose information favorable to the defense that meets the appropriate standard of materiality.").  In addition, the defense has all of the recordings involving the UCE, and the government will provide the defense with the agent's credentials and background, such that the defense will be able to conduct an effective cross examination.  *See, e.g., Mohamud*, 941 F. Supp. 2d at 1317-18.

In addition to the right to confrontation, the Sixth Amendment guarantees the right to a public trial.  U.S. Const. amend. VI; *see also Waller v. Georgia*, 467 U.S. 39 (1984).  The right to a public trial ensures that the defendant receives a fair trial, promotes the integrity of the fact-finding process, preserves public confidence in the criminal justice system, and affords the community an outlet to address crime.  *See Waller*, 467 U.S. at 46.  However, the Supreme Court has recognized the right to a public trial is not absolute and, under certain circumstances, the trial court may implement reasonable trial procedures to protect other compelling interests, without violating the Sixth Amendment.  *Id.* at 45.

The Supreme Court in *Waller* examined under what circumstances criminal proceedings could be closed to the public and gave four factors to determine if a party is justified in closing proceedings:

> the party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced, the closure must be no broader than necessary to protect that interest, the trial court must consider reasonable alternatives to closing the proceeding, and it must make findings adequate to support the closure.

*Id.* at 48.  Although the government here is seeking a less severe remedy than closing the entire trial, these factors are instructive in determining the appropriateness of the government's proposal.  The Ninth Circuit has recognized, however, that a more lenient rule applies to partial courtroom closures, such as when only particular individuals are barred from a courtroom.  *United States v. Sherlock*, 962

F.2d 1349, 1356 (9th Cir. 1989).  Under *Sherlock*, the court must find a "substantial reason" supporting closure (rather than *Waller*'s "overriding interest"), and must (1) provide defendant with an opportunity to be heard; (2) make factual findings to support the partial closure; and (3) consider reasonable alternatives to the partial closure.  *Id.* at 1358-59.

Courts have found that the interest in the officer safety can be a "substantial" or even "overriding" interest.  "The state interest in maintaining the continued effectiveness of an undercover officer is an extremely substantial interest, and . . . this interest would be seriously prejudiced by requiring the officer to testify in an open courtroom."  *Ayala v. Speckard*, 131 F.3d 62, 72 (2d Cir. 1997).  "It is clear that the State has an 'overriding interest' in protecting the identity of its undercover officers."  *Rodriguez v. Miller*, 537 F.3d 102, 110 (2d Cir. 2008).  In *Brown v. Artuz*, 283 F.3d 492, 501-02 (2d Cir. 2002), the Second Circuit held that protecting an undercover officer's safety satisfied the first prong of the *Waller* test and was an overriding interest likely to be prejudiced if the courtroom was open to the public during the officer's testimony.  These cases make clear that protecting other investigations and ensuring a law enforcement officer's safety are both compelling government interests, in satisfaction of the first *Waller* factor.

As explained in the under-seal declaration, the FBI has serious concerns about the disclosure of the UCE's identity and the dire consequences that could result from such disclosure.  While the government is not aware of any particular individual who might attend the proceedings during the UCE's testimony who would pose a threat, there is "no requirement that the prosecution must prove that particular individuals likely to attend the trial will disclose the officer's identity."  *Ayala*, 131 F.3d at 72.  The risk that anyone in the courtroom might reveal the appearance of the UCE to others would create a personal danger to the UCE and would run the risk of jeopardizing other FBI investigations.

As to the second *Waller* factor, the proposed measures requested by the government to protect the security and safety of the UCE and to protect the integrity of other undercover investigations are no broader than necessary to protect the government's overriding interests.  The government only seeks to protect from disclosure the true identity of the UCE.  To accomplish that goal, the government has proposed the limited set of security measures described above, which will protect the defendants' Sixth

/ /

Amendment rights while allowing the public to view the entire trial, except for the UCE's testimony firsthand and, if the Court allows, to still be able to hear the UCE's testimony in real time.

While the requested procedures would shield from public view the facial images of the UCE while the UCE testifies, the defendants would suffer no such deprivation, as they will be able to observe the UCE throughout the testimony. This procedure will not deprive the defendants of the ability to confront the UCE when the agent testifies against the defendants, nor will it deprive the defendants or the jury of the ability to evaluate the UCE's demeanor. Moreover, the public would be able to hear the UCE's testimony in its entirety if the Court permits a simultaneous audio feed. In addition, the transcript of the UCE's testimony would be available to the public in its entirety after the testimony is concluded. As a result, on balance, the deprivation to the public pales in comparison to the government's interest in concealing the UCE's identity from the public during the agent's continued work as an undercover employee.

As to the last *Waller* factor, the government proposes that the Court make the following findings based on the law above and information presented in the above-referenced *ex parte* and under seal declaration: 1) the measures proposed by the government are necessary to protect from disclosure the true identity of the UCE at trial; 2) disclosure of the UCE's true identity could jeopardize ongoing undercover investigations and the government's undercover investigative procedures; and 3) the UCE faces a real and substantial risk of danger if the agent's physical image was to be made publicly available.

/ /
/ /
/ /
/ /
/ /
/ /
/ /
/ /
/ /

For the reasons set forth above, protecting the UCE's true identity and prohibiting the public dissemination of the UCE's physical image will not impair the defendants' Sixth Amendment rights to confront the witnesses against them and to be tried publicly, nor their rights under *Brady* and *Giglio*. Because the measures proposed by the government are narrowly tailored to protect the important and substantial government interests at issue, the Court should grant the government's motion.

DATED:     October 13, 2016

Respectfully submitted,

/s/
Manish Kumar
Alexis Loeb
Trial Attorneys
Antitrust Division
U.S. Department of Justice