**SHAFFY MOEEL, ESQ.**
Cal State SBN 238732
MOEEL LAW OFFICE
P.O. Box 2737
El Cerrito, California 94530
Telephone:  (415) 735-5021
Email:  shaffymoeel@gmail.com

Attorney for Defendant
ALVIN FLORIDA JR.

**JOHN D. FORSYTH (SBN 178341)**
The Law Office of John D. Forsyth
2431 Fillmore Street
San Francisco, CA 94115
415-401-0729 telephone
415-401-7609 facsimile
sotts@earthlink.net e-mail

**RICHARD G. HULLINGER (SBN 294025)**
Law Office of Richard G. Hullinger
1000 Brannan Street, Suite 488
San Francisco, CA 94103
Telephone: (415) 575-3588
Facsimile: (415) 522-1506
richardh@defendergroup.com

Attorneys for Defendant
JOHN LEE BERRY, III

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 14-CR-582 PJH |
| Plaintiff, | |
| vs. | **DEFENDANTS' JOINT OPPOSITION TO GOVERNMENT'S MOTION TO WITHHOLD THE TRUE IDENTITY OF UCE-3322** |
| ALVIN FLORIDA, JR. *ET AL.,* | |
| Defendants. | |

## I. INTRODUCTION

Less than twenty-four hours before the pretrial conference the government notified counsel for the defendants that the government did not intend on disclosing the true identity of government witness UCE-3322 (a government employee).  Declaration of Shaffy Moel ("Moel Dec.") ¶ 3.  The government indicated that it would also be seeking additional measures to hide the identity of the witness, such as clearing the courtroom and allowing the witness to testify under a pseudonym.  Moel Dec. ¶ 6.  The government cited vague "safety" concerns in support of its position.  Moel Dec. ¶ 3.  The government made clear that the danger to the witness' safety is in no way attributable to the defendants in this case or in any other bid-rigging case pending in this district.  Moel Dec. ¶ 5.  In other words, nothing the defendants have done created the need for keeping the witness' identity a secret, but the defendants must nonetheless suffer the undeniably prejudicial consequences of such an extreme measure.

## II. SUMMARY OF ARGUMENT

At the pretrial conference, the Court expressed concern with the government's late notice that it chose to conceal trial witness UCE-3322's identity from the defense. As the Court correctly noted, apart from the untimeliness of the prosecution's move, concealing a trial witness' identity frustrates the defendants' ability to investigate and prepare its defense. There can be no greater erosion of defendants' due process rights. As further discussed below, nothing offered by the prosecutors in their motion overrides the Court's view stated at the pretrial conference that the government must either disclose UCE -3322 identity; or exclude all evidence associated with him; or dismiss the case.

## III. ARGUMENT

The government has requested that the undercover agent witness remain forever anonymous and be permitted to testify behind closed doors.  The government's request flies in the face of our most basic constitutional principles of justice.  "[W]hen the credibility of a witness is in issue, the very starting point in 'exposing falsehood and bringing out the truth' through cross-examination must necessarily be to ask the witness who he is and where he

1  lives." *Smith v. Illinois*, 390 U.S. 129, 131 (1968). "The witness' name and address open

2  countless avenues of in-court examination and out-of-court investigation. To forbid this most

3  rudimentary inquiry at the threshold is effectively to emasculate the right of cross-examination

4  itself." *Id*.  The government's attempt to withhold the true identity of undercover agents and

5  sources gives way when disclosure would be "relevant and helpful" to the defense, or lead to

6  *Brady* information from those witnesses.  *See Roviaro v. United States*, 353 U.S. 53, 59 (1957)

7  (disclosure required because defendant and informer were main participants in alleged criminal

8  conduct).

9           Whether disclosure of a confidential source would be "relevant and helpful" must be

10  evaluated under a three-prong balancing test in the Ninth Circuit: "(1) the degree of the

11  informant's involvement in the criminal activity; (2) the relationship between the defendant's

12  asserted defense and the likely testimony of the informant; and (3) the government's interest in

13  nondisclosure." *United States v. Gonzalo Beltran*, 915 F.2d 487, 489 (9th Cir. 1990) (citation

14  omitted).  Here, at least the first two factors strongly favor disclosure.  The government's

15  under-seal arguments (which the defense has not been permitted to see) regarding disclosure

16  cannot outweigh the defendants' due process rights at stake.

17           UCE-3322 had a critical role in investigating the trial defendants. On numerous

18  occasions, he met with the defendants and directly participated in rounds at public auctions. He

19  recorded, videotaped and photographed the defendants at public auctions and "rounds." He met

20  with at least one of the defendant's, Al Florida, in his office and recorded their conversation,

21  which the government has noticed as an anticipated exhibit.  Given UCE-3322's extensive

22  involvement, the government intends to rely on him for the basis for its 801(d)(2)(E) evidence.

23  In short, UCE-3322 critical role in the government's investigation and prosecution renders

24  disclosure of his identity absolutely necessary to the defense.

25           Second, defendants maintain their innocence and the testimony of the undercover agent

26  will in all likelihood directly implicate defendants in an alleged "bid-rigging" scheme that the

27  agent participated in.  The agent's credibility is central to the government's case.  A full

28

1   investigation into his actions, motives, and prior conduct, which bears directly upon his

2   credibility and reliability as a witness, is necessary to the defense.

3           Third, whatever public interest there is in protecting the agent's or identity is

4   outweighed by his centrality to the alleged criminal activity.  *See Roviaro*, 353 U.S. at 64-65

5   (disclosure required because defendant and informer were main participants in alleged criminal

6   conduct.)  As stated by defense counsel at the pre-trial conference, prosecutors and

7   investigators always have to make tough decisions regarding disclosure of informants and

8   undercover agents. Nothing about this case removes it from this commonplace decision seen

9   time and time again. In fact, the government's refusal to disclose UCE-3322's identity is even

10  more flawed given that the alleged "safety" has absolutely nothing to do with these trial

11  defendants. Nothing supports curtailing the defendants' rights as proposed by the prosecution.

12          In support of its request to keep the identity of the undercover agent secret, the

13  government cites cases that are readily distinguishable from the instant matter and are not

14  dispositive.

15          In *United States v. Kwok Cheung Chow*, No. 14-cr-196 (N.D. Cal. Jun. 24, 2015), the

16  district court permitted safety measures during the undercover agent witness testimony because

17  the danger to the FBI Agent alleged emanated from the lead defendant himself.  Here, the

18  government has indicated that whatever safety concerns its has regarding the disclosure of its

19  agent's identity has nothing to do with the defendants themselves, or with any defendant in a

20  bid-rigging case in the district.

21          The government's reliance on *United States v. McGaha*, No. 15-cr-126, (N.D. Cal. Apr.

22  27, 2016) is similarly misplaced.  In that case, Judge Alsup denied the government's original

23  motion requesting safety measures and provided in his order:

24

25          [t]he special procedure requested (emptying the gallery and substituting a
            television camera in the courtroom) runs too great a risk of prejudicing the
26          accused, making it appear that the life of the witness is in danger by reason of
            confederates of the accused. The customary curative instruction suggested by
27          the government would be prejudicial by elevating the undercover witness to an
            endangered and heroic status in service of protecting national security. This is
28

1   not a national security case. The undercover FBI agents shall testify publicly in

2   open court. Before the undercover agents testify, the Court will admonish the

3   public that they are not to take any photographs and court security officers will

4   be instructed to confiscate any phone or camera that is being used to capture an

    undercover agent's image. Furthermore, a court security officer will be

5   stationed in the hallway during the testimony of the undercover officers, who

    will not let anyone in the courtroom during the middle of the testimony, and

6   who will ensure that no one is taking pictures through or peering through the

7   hallway window, into the courtroom. Last night, the government filed a

    "motion for clarification." The government lost this motion and is trying the

8   patience of the Court through its efforts to reclaim some ground via motions

9   for clarification. Nevertheless, the Court will consider the following procedure:

    (1) The undercover agents' real names, as well as the pseudonyms they would

10  be testifying under, will be part of the list vetted with the jury venire to

11  determine any potential conflicts. (2) Before each undercover witness testifies,

    he will be sworn in with his real name in a sealed hearing, outside the presence

12  of the jury. (3) During the undercover agents' testimony in front of the jury,

13  each will be referred to once by their pseudonym, and thereafter will only be

    referred to as "Agent." The jury will not be told that the undercover agents are

14  testifying under pseudonyms, as that would risk prejudicing the defense for the

15  reasons stated above. The parties shall be prepared to discuss this proposed

    procedure tomorrow at 7:30 A.M., before the jury venire is brought into the

16  courtroom.

17      *Id.* at Dkt. 406.  Thus, in *McGaha*, despite the government's requests, the undercover

18  witness' identity was not only ultimately revealed to the defense, but to the jury venire itself,

19  *and* the agent testified in open court like every other witness.

20      In *United States v. Mohamud*, 941 F. Supp. 2d 1303 (D. Or. 2013), the district court did

21  permit two undercover agents to testify without disclosing their true identities, but the

22  defendant in that case was charged with attempting to use a weapon of mass destruction,

23  specifically a destructive device or explosive bomb, against a person or property within the

24  United States, in violation of 18 U.S.C. § 2332a(a)(2)(A).  The district court indicated that

25  disclosure was appropriate, particularly in cases which implicate national security.  *Id.* at 1317.

26  The bid-rigging case at issue here is hardly a case that presents risks to national security, and

    perhaps it can even be argued that a more inapposite case to that of terrorism could not even be

27  found.

28      The government's motion fails to provide any controlling authority regarding the

    inquiry to determine whether a witness' identity may be withheld from the defense in

circumstances where the witness is an undercover government agent inextricably linked to the alleged criminal activity and where the danger to the witness is in no way attributable to the defendants.  *See e.g.*, *United States v. Rangel*, 534 F.2d 147 (9th Cir. 1976) (threat to informant's safety); *United States v. Ellis*, 468 F.2d 638 (9th Cir. 1972) (noting in *dicta* that "the procedures suggested in *United States v. Palermo*, 410 F.2d 468 (7th Cir. 1969) should ordinarily be followed", however in *Palermo*, the witnesses' were informants and their names were disclosed to the defense and jury; only the witnesses' addresses and present employment at issue); *United States v. Ramos-Cruz*, 667 F.3d 487, 492 (4th Cir. 2012) (court permitted El Salvadorian police officers to testify under pseudonyms in MS-13 case); *Brown v. Kuhlmann*, 142 F.3d 529, 531 (2d Cir. 1998) (court found no error in allowing police office to testify under a pseudonym since the testimony provided only "cumulative evidence with respect to a collateral issue in the case"); *Siegfriedt v. Fair*, 982 F.2d 14, 18 (1st Cir. 1992) (petitioner discovered the civilian witness' true name prior to trial and the name under which the witness testified was what he was known as in the community);  *Ayala v. Speckard*, 131 F.3d 62 (2d Cir. 1997) (defendants knew undercover officers' true identity before trial); *Waller v. Georgia*, 467 U.S. 39 (1984) (issue of pretrial disclosure of witness true identity not presented); *United States v. Sherlock*, 962 F.2d 1349 (9th Cir. 1992); (issue of pretrial disclosure of witness true identity not presented); and *Brown v. Artuz*, 283 F.3d 492 (2d Cir. 2002) (issue of pretrial disclosure of witness true identity not presented).

In short, all of the cases cited by the government in their brief can be factually distinguished from the instant bid-rigging prosecution because the safety concerns that those courts were attempting to protect against arose out of danger to the witness from the defendant himself.  That is simply not the case here.  The government thus does not present any authority for the proposition that where the safety concern to a witness has nothing to do with the individual accused, the accused's constitutional rights pursuant to the 5th and 6th Amendment rights can nevertheless be violated.

## IV.    CONCLUSION

1    Several weeks back, the prosecution stood before this Court and requested that the trial

2    date remain on October 31,  2016. No mention of any "safety" concern or any reason to conceal

3    UCE-3322 was mentioned. In good faith, defense counsel worked to meet deadlines to keep

4    that trial. The prosecution's untimely late hour request to conceal UCE-3322 completely

5    frustrates the defendants' constitutional rights and should be denied outright.

6

7    DATED:  October 14, 2016                    Respectfully submitted,

8

9                                          ____/s/_____
                                           SHAFFY MOEEL
10                                         Attorney for Defendant
                                           ALVIN FLORIDA, JR.
11

12                                         ____/s/_____
                                           STEVEN GRUEL
13                                         Attorney for Defendant
                                           ROBERT ALHASHASH RASHEED
14

15                                         ____/s/_____
                                           JOHN FORSYTH
16                                         Attorney for Defendant
                                           JOHN LEE BERRY, III
17

18                                         ____/s/_____
                                           EDWIN PRATHER
19                                         Attorney for Defendant
                                           REFUGIO DIAZ
20

21

22

23

24

25

26

27

28